Thornton, adm'r, vs. Burch, ex'r.

No. 152.—D. THORNTON, administrator, &c. plaintiff in error, vs. JOHN C. BURCH, executor, &c. defendant in error. JOHN C. BURCH, executor, &c. plaintiff in error, vs. D. THORNTON, administrator, &c. defendant in error.

[1.] Executor of tenant for life, whose estate is determined by the act of God between the planting and severance of the crop, is entitled to the profits of the crop.

[2.] Executor of tenant for life is not entitled to the balance of the negroes given over after the determination of the life estate, whether employed in making and gathering the crop or hired out.

[3.] Money, notes and accounts may be limited over, after the determination of a life estate.

[4.] The gift of the whole estate, real and personal, includes money.

[5.] A gift over of his whole estate, real and personal, after the determination of an estate for life, is a bequest of the money, as well as other property.

[6.] A direction that the whole estate be sold, for the purpose of making a distribution, does not prevent money from passing when the terms used in the will are sufficient to dispose of it.

In Equity, in Elbert Superior Court. Decision by Judge JAMES THOMAS, September Term, 1856.

William S. Burch, by his will, loaned all of his property, both real and personal, to his wife during her natural life, and at her death, provided " the whole of my estate be sold, and the moneys from the same be put into three equal shares, share and share alike." " The one-third part of the moneys so arising from the sale of the whole of my estate, I give and bequeath to be equally divided betwixt the whole of my above named brothers and sisters."

D. Thornton, as administrator of one of the brothers, filed his bill against John C. Burch, as executor of W. S. Burch, alleging that the widow died in July, 1855; and that from that time till January, 1856, said executor, who was also executor of Mrs. Burch's will, claimed that he was not responsible for the value of the negroes worked and hired out by

him between the periods aforesaid. The Court below on demurrer held, that the executor should account for the negroes hired to other persons, but not for the negroes used for agricultural purposes on the land from which the tenant for life was entitled to emblements. To this decision both parties excepted.

The bill also sought to have an account of a certain sum of money and promissory notes on hand at the death of testator. To this part of the bill defendant demurred. The Court sustained the demurrer, and complainant excepted.

HESTER & AKERMAN; VANDUZER, for Thornton.

THOMAS; COBB, for Burch.

*By the Court.*—McDONALD, J. delivering the opinion.

[1.] The tenant for life died on the 1st day of July, 1855. The complainant, as the legal representative of one of the the remainder-men, asks for an account of the growing crop of that year. The tenant for life possessed an uncertain estate in the land, which was determined by the act of God, between the planting and the severance of the crop, and her executor is entitled to the emblements. (*Sheppard's Touch.* 431, 471; 2 *Black. Com.* 122.)

[2.] There is no ground in law for the executor of the tenant for life to set up a claim to the labor of negroes employed in making and gathering the crop after her death, or to the hire of those who were not so employed. It is on the principle that, *actus Dei nemini facit injuriam,* that her executor is entitled to the emblements or profits of the crop. She had expended labor in planting, tilling and, perhaps, in manuring the lands; and as her interest was uncertain and not determined by her own act, her representative should have the crop or emblements as a compensation. (2 *Black. Com.* 122.) The remainder-man in England is not bound to provide labor to complete and gather the crop, and our laws im-

pose no such charge upon him.    The defendant is, therefore, accountable to the remainder-men for the hire of all the negroes.

[3.] There can be as little doubt of his liability to account to the remainder-men for the money and notes left by the first testator.    It is insisted that whatever may become of them, they do not pass to the legatees in remainder under the will.

There is no question but " chattels may be limited over by way of remainder, after a life interest in them is created, and there is no difference in that respect between *money* and any other chattel interest."    (2 *Kent's Com.* 252.)    Did the testator dispose of his money, notes and accounts by his will?  Were they limited over to the legatees in remainder, on the death of his wife?    The third clause of the will, so far as it has reference to this question, is in these words :  " I lend to my beloved wife, Elizabeth, the whole of my estate, both real and personal, during her natural life or widowhood," &c.

[4.] The terms of this bequest are as comprehensive as possible.    They include testator's whole estate, real and personal, and make his wife his "universal successor" for her life or widowhood, and entitle her to all the gold and money during that period.    (3 *Swinburn on Wills*, 931–'2.)   The word "estate," is *genus generalissimum*, and includes all things, real and personal.    (*Ward on Leg.* 208.)    The wife, therefore, took money, notes and accounts during her life, which is nothing more nor less than the interest.

It was the duty of the executor to invest it, pay the interest to the tenant for life; or, as the wife was executrix, to use the interest and preserve the principal for those who are to take afterwards.    (*Field vs. Hitchcock*, 17 *Mass. Rep.* 182.)

[5.] Were the money, notes and accounts limited over to the complainant's intestate and the other remainder-men? The widow never married.    The testator directed that in that event, (that is, in case his wife should not marry,) at her death the whole of his estate, both real and personal, should

be sold and the moneys arising therefrom be put into three · equal shares. He directed how these shares were to be distributed. Two of them he gave to his brothers and sisters,. of whom complainant's intestate was one. One of these shares, however, he lent to his sister, Betsey Cook, during her life, after the death of his wife, and then over to the brothers and sisters; but Mrs. Cook dying during the life of the widow, the brothers and sisters became entitled to that share on her death.

[6.] It is argued that the money, notes and accounts must have been intended as an absolute gift to the wife, or if not, they could not pass, by the terms of the will, to the legatees in remainder, because the testator directs his whole estate to be sold, and money cannot be sold. The omission of the testator to refer to his money, or his directing his estate to be converted into money for the purpose of making an equal distribution amongst the objects of his bounty, when a part of it consisted of money, cannot impair the efficacy of the bequest to the remainder-men as a disposition of his entire estate, including his money. He did not intend that his wife, in any event, should have more than a life estate in his property. He intended that she should have a life estate in his entire property, if she did not marry; and he used terms that gave it to her. The terms he used to secure the estate in remainder to the persons for whom he intended it, are equally comprehensive to convey the money, as well as his other property. That he directed his estate to be sold, does not restrict the gift of the entire estate, both real and personal, to such property as is usually the subject of sale. It does not exclude money. On this question, the case of *Hearn vs. Wigginton*, (6 *Mad.* 119,) is strongly in point. The words of the will in that case are, " All my other effects I will to J. H. &c. to be sold for his benefit"; and the question in that case was, whether *money* in the funds passed to him? It was held that it did.

The decision of the Court below on the demurrer was excepted to by both parties, and we reverse the judgment of

that Court on complainant's exceptions, so far as the Court held that the representative of the tenant for life was entitled to the labor of the slaves on the plantation devised to her during her life, for the balance of the year 1855, after her death; and we further reverse the judgment, that complainant was entitled to no discovery or relief as to the money on hand at the death of the testator, William S. Burch. On all other points made in said bill of exceptions, we affirm the judgment of the Court.

On the bill of exceptions of the defendant, John C. Burch, executor, &c. we affirm the judgment of the Court.