JOHN T. HOGAN and others, *v.* WM. J. HOGAN, Ex'r, and others.

A clause in a will providing—"and should there be anything at my death undivided, it is my will *that it be sold and equally divided* among my four sons after paying my funeral expenses and all just debts,"--in a case where the residue consisted of a considerable amount of money and choses in action, and an inconsiderable amount of other personal property, disposed of the whole of such residue.

A legacy of $1000 to A B "to pay her debts, and for her support as she needs it," does not warrant an executor in seeking out such debts, paying them off and retaining the amounts upon a settlement with the legatee.

[*Bradley* v. *Jones* 2 Ire. Eq. 245; *Alexander* v. *Alexander* 6 Ire. Eq. 229, and *Scales* v. *Scales* 6 Jon. Eq. cited and distinguished.

BILL, set for hearing upon replication and proofs, and transmitted to this Court from Fall Term 1866 of the Court of Equity for ORANGE.

The bill was filed by certain legatees and next of kin of Thomas Hogan deceased, against the defendants, as his executors.

It set forth that, by his will made on the 20th of November 1856, the deceased had, among other things, bequeathed to Martha Kirkland, one of the plaintiffs, one thousand dollars " to pay her debts and for her support as she needs it;" and after giving other legacies, had concluded as follows : "and should there be anything at my death undivided, it is my will that it be sold and equally divided among my four sons, after paying my just debts and funeral expenses;" that under this clause was not included, as they were advised, a considerable amount of ready money, notes, bonds and accounts that were on hand at his death; and that he died intestate in regard to them. The prayer was for an account, the payment of the legacies and distributive shares, and for further relief.

The answer denied that the deceased had died intestate as to any part of his estate, and in regard to the legacy due to Martha Kirkland, averred that it had been, with her consent, paid off by taking up debts due by her, and in paying an account standing against her upon the books of the testator. To this there was a replication.

An account having been ordered and taken, under a decree of this Court, exceptions were filed to it by the defendants and argued by counsel.

*Graham*, for the plaintiffs, upon the matter of the intestancy, cited *Teague* v. *Alexander*, 2 Dev. Eq. 348, *Bradley* v. *Jones*, 2 Ire. Eq. 248; *Alexander* v. *Alexander*, 6 Ire. Eq. 229; *McCorkle* v. *Sherrill, Ib.* 173; *Pippin* v. *Ellison*, 12 Ire. 61; *Scales* v. *Scales*, 6 Ire. Eq. 163; *Hastings* v. *Earp*, Phil. Eq. 5.

*Phillips & Battle, contra.*

The residue includes the money and choses in action. The decisions in N. C. upon this point have gradually, and perhaps inadvertently assumed a phase apparently to the contrary.

*Frazer* v. *Alexander* went upon special circumstances. *Bradley* v. *Jones* was argued only for the defendant, and the language varies from that before us. In *Alexander* v. *Alexander* the word is "property," at a time when it was thought in N. C. (as it is not now) that this did not include choses in action. *Pippin* v. *Ellison*, shows want of reliance on the state of authority in N. C. to that time, and presses the word "property," and other expressions. *Lowe* v. *Carter* 2 Jon. Eq. 377, has "property," and the language is not residuary. In *Scales* v. *Scales* the word is "estate," and the Court speaks of a "presumption." Is it a presumption "of law," or only "of fact," that notes are not to be *sold* under a will. At all events neither in that nor in any other case do we find that there has been submitted to the Court the construction now contended for by the defendants, to-wit, that it is more reasonable to modify the word *sell* by the word *property*, or *estate*, or *thing*, than *vice versa*. It is to be presumed (in the absence of special language as a context, to the contrary) that a testator does not intend to die intestate, and therefore that he used the word *sell*, for, *convert into money*, or a like phrase.

In *Hastings* v. *Earp*, the word is property. The later decisions ignore those before *Pippin* v. *Ellison*, which went upon a doctrine greatly modified in *Hurdle* v. *Outlaw*.

The only cases out of N. C. which we have found, hold a contrary doctrine, viz: that the primary intention is to convey *all*, and the *method* of division is only secondary. *Hearne* v. *Wigginton*, 6 Madd. 119; *Thornton* v. *Bunch*, 20 Ga. 791; *Spriggs* v. *Weems*, 2 H. & McH., 266; *Garrett* v. *Garrett*, 2 Stob. Eq. (at p. 232) *ex parte* Artz. 9 Md. 55.

READE, J. 1. The first exception is sustained. After several specific bequests, there is the following: " And should there be anything at my death undivided, it is my wish that it be sold and equally divided among my four sons, after paying my funeral expenses and all just debts."

There were on hand, undivided, a considerable amount in money and choses in action, and an inconsiderable amount of

personal property, and the question is, whether the money and choses in action pass under the residuary clause.

It is so clear that the testator did not intend to die intestate as to anything, that we should feel but little difficulty in construing the clause, if it were not for several decisions of this Court, in cases somewhat like this, from which it is necessary to distinguish it.

In *Bradley* v. *Jones,* 2 Ire. Eq. 245, the words were, "all the balance of my estate, that is not given away, to be sold, and the money arising from the sale, I give, &c."

In *Alexander* v. *Alexander,* 6 Ire. Eq. 229, the words were " all the residue of my property, both real and personal, to be put to sale &c., out of the proceeds of which sale, &c."

In *Scales* v. *Scales,* 6 Jon. Eq. 163, the words were, " property shall be sold, and the money arising from the sale, &c."

In all those cases it is decided, that money on hand and choses in action did not pass, the prominent reason being, that they are not ordinarily the subjects of sale, and in all the cases, a *sale* was directed, and a division of the *proceeds.* And there are criticisms upon the words " estate," " property," &c.

The case before us is distinguished from those cited.  (1.) The words here are as comprehensive as any that can be used. " Anything" includes *every* thing—*every thing.*. (2.) In the cases cited, the property was to be *sold;* there was to be no division without a *sale;* for it was the *proceeds* of sale, that were to be divided. In our case, a sale is not indispensable. It is to be "sold and divided." Observe, not sold, and the proceeds divided, but " sold and divided " That is to say, it is to be *divided,* and in so far as a sale is necessary to a division, it is to be sold. If there be part money, part choses in action, and part property, the division, the main object, may be best effected by holding the money, collecting the debts, and selling the property, and then, when the whole is got together, dividing. Why might not this have been done in the cases cited? Because only the *proceeds* of the *sale* were to be divided. In this case, stress may also be laid upon the fact, that the division is directed to be made after his funeral

expenses, and just debts are paid, showing that it was the intention of the testator, that all that remained of his estate, was to divided under the residuary clause.

The second exception is overruled. The legacy of $1,000 rtha Kirkland " to pay her debts, and for her support as she ..eds it," *was not adeemed in testator's life time, and has not been paid to her since his death.* It was no part of the business of the executor to hunt up her debts and pay them off for her. It was his duty to pay it over to her, to be used at her discretion. It is alleged in the answer, that there are charges in the way of a book account against her by the testator, to the amount of $298, and the executor claims to retain that amount. He would have the right to retain any ascertained debt against her, due the testator, but there was replication to the answer, and there was no evidence to support it. There is an affidavit of the executor that he offered vouchers before the commissioner, of his having paid the legacy to Martha Kirkland, in accordance with the will, and that the commissioner refused to allow them. We suppose he means that he offered vouchers of his having paid off debts for her, as set forth in his answer, and we have said that that cannot avail him. If he has paid the legacy to *her,* he will be entitled to have the payment allowed when an execution shall be moved for.

The report will be reformed to correspond with this opinion, and, if the parties desire it, it will be referred to the clerk for that purpose.

PER CURIAM.                                    Decree accordingly.