E. S. HARKNESS v. HANNAH HARKEY.

*Wills.*

A testator disposes of his plantation, household and kitchen furni-
ture, and makes sundry money legacies as the "full shares" of
the legatees named, and then provides, after payment of debts,
"that the remainder of my property be sold and equally divided
between my two sons;" *Held*, that the court below erred in hold-
ing that the money on hand at the testator's death was undis-
posed of. The testator did not intend to die intestate as to any
of his property. The money on hand and the proceeds of sale of
"the remainder of his property" go to make up the residuary fund
to be divided between his sons.

(*Bradley* v. *Jones*, 2 Ired. Eq., 245; *Alexander* v. *Alexander*, 6 Ired.
Eq., 229; *Scales* v. *Scales*, 6 Jones Eq., 163; *Hogan* v. *Hogan*, 63
N. C., 222, cited and approved.)

CIVIL ACTION for construction of a will, heard at Spring
Term, 1884, of UNION Superior Court, before *MacRae, J.*

E. S. Harkness and P. C. Stinson, executors of John
Harkey deceased, brought this action against the widow and
heirs-at-law of the testator to obtain a construction of his
will.

The court below adjudged that the testator made no disposition of the money (now in his executors' hands) and is therefore intestate as to that fund. From this judgment the defendants appealed.

*Messrs. Payne & Vann*, for plaintiffs.
*Messrs. Covington & Adams*, for defendants.

MERRIMON, J. The following is a copy of the material parts of the will, we are called upon to construe:

1st. I will and devise that my wife, Hannah Harkey, have the plantation, household and kitchen furniture, and everything that belongs to the plantation on which I now live during her natural life, then said plantation, containing one hundred and twelve acres, to be Clark Harkey's during his natural life, and if he die without heirs, then said land to go to John F. Harkey or his heirs.

2nd. I will that Madison Harkey's heirs each shall have ten dollars apiece, and that shall be their full share.

3rd. I will that Thomas Harkey shall have fifty dollars, and James Milton Harkey shall have fifty dollars, and that Mary C. Harkey shall have fifty dollars, and Ida F. Harkey shall have fifty dollars, and that Ellen Harkey shall have fifty dollars, and that Louisa Harkey shall have fifty dollars, and that shall be their full share.

4th. I will and devise that after my just debts are paid, and burial expenses of myself and wife Hannah, that the remainder of my property be sold and equally divided between my two sons, Clark W. Harkey and John F. Harkey, and that they shall furnish suitable tombstones for myself and wife Hannah out of the 4th item of this my will.

It seems to have been the purpose of the testator not to die intestate as to any of his property, but to dispose of the whole of it, of every kind, by his will. He first makes particular dispositions of portions of it, and then, in the last

clause, he makes a sweeping residuary provision in favor of his two sons. After having made provision for his wife and certain other persons, and for the payment of his debts and the burial expenses of himself and his wife, he then provides, " that the *remainder of my property* be sold and equally divided between my two sons, Clark W. Harkey and John F. Harkey, and that they shall furnish suitable tombstones for myself and wife Hannah out of the 4th item of this my will."

The words, " the remainder of my property," are very broad and comprehensive in their meaning, and no purpose to use them in a restricted sense appears. He had, just before he employed them, disposed of land, " household and kitchen furniture, and everything that belongs to the plantation," and likewise provided pecuniary legacies amounting to several hundred dollars. He was advertent to the variety of his property; he thought of the various kinds he had, and by the " remainder" he meant all like property he might have at the time of his death. The word " property " is broad enough in its legal meaning to embrace money-notes, bonds and the like, and the word " remainder " implies all, the whole that is left. Besides, his sons Clark and John seem to have been the chief objects of his bounty after providing for his wife. He devises his plantation to his wife for life, then to his son Clark for his life, and if he should die without children, then to John or his heirs. As to those to whom he gives pecuniary legacies, he expressly provides that what he gives them respectively " shall be their full share," plainly meaning their full share of his whole estate.

The purpose of the testator, after the provisions made in the first clause of his will, was to turn his whole estate into a cash fund, and after paying his debts, burial expenses and the pecuniary legacies, to divide the remainder equally between his two sons, Clark and John. This much he charged

his executors to do, and then he charged his sons to "furnish suitable tombstones" for his wife and himself out of the fund they might realize out of the fourth clause. The money on hand at his death served the purpose of paying the debts and legacies, and any part of it left remained ready to be divided as part of the general residuary fund arising from the sale of the property. The fourth clause must be taken as meaning that the property other than cash shall be sold to make the whole fund, cash, to be divided.

It is suggested that the testator did not mean by the fourth clause of his will that the money on hand should be sold; that such a direction would be idle and nonsensical, and therefore he did not dispose of, nor intend to dispose of the money on hand at the time of his death. We agree that he surely did not intend that the money should be sold, but *non constat*, that he did not intend to dispose of it as part of his property given to his two sons. The general purpose manifested by the will as a whole, as well as its several provisions, go to justify the construction we give it, and the mere fact that the testator omitted in the residuary clause to specify that the money should not be sold, but should go to increase the fund raised by the sale of other property, cannot be allowed to disappoint the purpose indicated in the way we have pointed out. It is more reasonable to conclude, that he meant to direct the sale of such parts of the remainder of his property as might be necessary to turn the whole of it into a cash fund for the purpose contemplated. It is sufficient that it appears that the testator intended that his money on hand, and as well, his choses in action, should pass by the residuary clause.

There are cases no doubt somewhat similar to this, where the implication that the money on hand and the choses in action passed under a residuary clause did not arise, and it was held that the testator died intestate as to such things.

Such are the cases of *Bradley* v. *Jones,* 2 Ired. Eq., 245; *Alexander* v. *Alexander,* 6 Ired. Eq., 229, and *Scales* v. *Scales,* 6 Jones Eq., 163; but in these and like cases, the intent of the testator not to die intestate, and to give his cash and choses in action to certain of his children, did not appear as strongly as in this case. This case is more like that of *Hogan* v. *Hogan,* 63 N. C., 222.

The superior court erred in the advice and direction it gave the executors. The cash on hand, after the payment of debts, funeral expenses and pecuniary legacies, ought to go with the proceeds of the sale of the remainder of the property that must be sold, to the two sons, Clark W. Harkey and John F. Harkey, and we so advise and direct. Let this be certified to the superior court according to law.

· Error. Reversed.