ANDREWS, executor, *et al. v.* SANDERS, trustee, *et al.; et vice versa.*

 November 8, 1937.

*W. J. Wallace, Orville A. Park, Benning M. Grice,* and *Harry S. Strozier,* for plaintiffs in error.

*L. D. Moore, Willingham & Willingham,* and *George W. Garrett,* contra.

HUTCHESON, Justice. This case is in this court on exceptions to a decree in a suit instituted by George S. Sanders and others as Deacons of the Providence Baptist Church of Roberta, Crawford County, as residuary legatees under the will of Sarah E. W. Sandefur, deceased, against J. Wilde Andrews, executor of said will, seeking accounting and injunction, and among other things praying that the executor be required to turn over the real estate to the petitioners for the use and benefit of said church, rather than the proceeds thereof. To this suit certain legatees named in the will, including Andrews, filed interventions, and Andrews as executor answered. After verdict and decree, Andrews, as executor and as an individual, excepted to that portion of the decree holding that under the terms of the will money of which the testatrix died seized and possessed did not pass under the bequest to him. The plaintiffs filed a cross-bill of exceptions, assigning error on other portions of the decree and rulings made during the trial. We will first pass upon the question raised in the main bill of exceptions, relating to the construction of the will.

On May 18, 1927, the testatrix executed her will. In item 1 she directed that her just debts be paid. In item 2 she directed that she be buried in a Christianlike manner, and that her executor place a marker over her grave, using for such purpose such funds, not exceeding $150, as she might have to her credit in the bank at the time of her death, and, that if there were not a sufficient amount to her credit in the bank, to use other funds coming into his hands as executor from the estate. In item 3 a bequest was made to Alice Laura Lockett of $250 "in cash out of my estate." Item 4 directed, "that for the purpose of carrying out my desires and wishes as hereinabove expressed and as hereinafter

expressed, that my property be converted into cash, as hereinafter authorized" (item 6 authorizes the executor to sell at either private or public sale, without an order of the court of ordinary), "by my executor as soon as practical after my death, and without sacrificing the same, but within any event within two years after my death." Item 5 directed "that the residue of my estate after the same has been converted into cash as herein provided be turned over and delivered to the Deacons of Providence Baptist Church, Roberta, Georgia, as a trust fund, and to be invested by them as trustees of said fund in interest-bearing securities, such as guardians and trustees are permitted," etc. In a codicil executed on May 30, 1928, she directed the placing of certain type of slab over her grave and a single marker, and designated J. Wilde Andrews as executor in lieu of the one previously named, who had died. On January 1, 1934, "being desirous of making changes and adding additional bequests and devises in said last will and testament," the testatrix executed a second codicil. In item 1 thereof she bequeathed to Mrs. Josie Hunt certain specific articles of furniture, furnishings and bedding in a certain room. In item 2 she bequeathed to Mrs. Hunt "any other article or articles of household and kitchen furniture, bedding, wearing apparel, or other goods in my home at the time of my death, the same to be selected by her." Item 3 bequeathed to Andrews "all the other household and kitchen furniture, and all goods and personal property of every kind and character that I may die seized and possessed of, subject to items one and two hereof; that is, said Mrs. Josie Hunt is to have the property mentioned in item one and such article or articles as she may select mentioned in item two hereof, and the remainder of my household and kitchen furniture and personal property of every description that I may die seized and possessed of I give and bequeath to" Andrews. Item 4 provides: "In the event there should be any article or articles of household furniture or other personal property not desired by the said Mrs. Josie Hunt or J. W. Andrews Sr., as provided in items one, two, and three hereof, it is my wish and desire that same be sold and proceeds to go as proceeds from sale of other property as provided in my last will and testament."

There was no parol evidence of the intention of the testatrix, and the construction of the will was submitted to the court to be

determined as a matter of law. Does the third item of the second codicil to the will, when construed in connection with the will as a whole, evidence an intention on the part of the testatrix to bequeath to Andrews money of which she died seized and possessed? The language of the third item, "all goods and personal property of every kind and character of which I may die seized and possessed," standing alone and in the absence of any other intention to the contrary in the will as a whole, and given its technical meaning, might be construed to include money (*Thornton* v. *Burch,* 20 *Ga.* 791; Bromberg *v.* McArdle, 172 Ala. 270, 55 So. 805, Ann. Cas. 1913D, 856), and if construed in connection with the preceding terms, "all the other household and kitchen furniture," the rule of ejusdem generis would ordinarily apply. 8 R. C. L. 224, § 186. Assuming, however, that even in view of the first and second items and the other language of item three, such language is sufficiently broad to include money (Winkler *v.* Woodruff, Del. Ch., 182 Atl. 409), we are of the opinion that in view of the fourth item of the second codicil, and the residuary clause of the original will, the will construed as a whole sufficiently shows that the testatrix, by the use of such terms as used in the third item, did not intend to include money in the bequest to Andrews. This fourth item directs that such household and kitchen furniture and other personal property not desired by Andrews or Hunt, as provided in items 1, 2, and 3, be sold. The term "other personal property" as used in this item necessarily refers, in the absence of any restriction placed thereon, to other personal property described in the previous items, not more particularly described in the fourth item. Consequently it refers to "personal property of every kind and character that I may die seized and possessed of," as used in item three. If this be true, the direction that such personal property be sold and converted into cash evidences a plain intention that the general terms used in the third item did not include cash, and that no money was intended to be bequeathed to Andrews. Cf. Huntsville *v.* Smith, 137 Ala. 383 (35 So. 120); Lowe *v.* Carter, 55 N. C. 377. It is insisted by Andrews that the third item of the second codicil used language broad enough to bequeath money to him, and that the phrase "other personal property" as used in the fourth item should be construed as ejusdem generis with the phrase "household furniture" immediately preceding,

and that as thus construed the language of the fourth item would have no bearing on the meaning of the language of the third item, and would not restrict the same. We can not agree to this conclusion, for the reason that it overlooks the apparent fact that the term "other personal property" as used in the fourth item refers to and includes within its terms personal property as bequeathed in items 1, 2, and 3, and thus controls the meaning of the term "personal property of every kind and character" as used in the third item, the bequest to Andrews; this whether the term "personal property" used in the fourth item is ejusdem generis with household and kitchen furniture, or includes intangibles other than money.

It is further insisted by counsel for Andrews, that if their construction of the residuary item of the will is a correct one, that is that the residue is only composed of money derivable from property of the estate convertible into money, then to construe the third item of the second codicil as not bequeathing money to Andrews would create an intestacy as to the money of which the testatrix died seized and possessed. If their construction of the residuary item were correct, this no doubt would lend great weight to their contention that the bequest to Andrews included such money; but we do not agree to their construction of the residuary item. In view of the item of the will immediately preceding the residuary item directing the executor to convert the property of the testatrix into cash for the purpose of carrying out the provisions expressed in the will, the language of the residuary item, that "the residue of my estate after the same has been converted into cash as herein provided," merely evidences a supposition on the part of the testatrix that the preceding provision of her will would be carried out and that the residue of her estate would consist of cash money, and as such would then be turned over to the trustees named; and the language "after the same has been converted into cash" is descriptive of the term "estate," and not the term "residue." The word "estate" is genus generalissimum, and includes all things real and personal, including money, and the reference to it as being converted into cash would not prevent money from passing under the residuary item. See *Thornton* v. *Burch,* 20 *Ga.* 791, 794. It follows that the construction placed by the court on

the bequest to Andrews was correct, and the decree in that particular is affirmed.

■ The cross-bill of exceptions recites that the court submitted to the jury for answer the question whether the executor had performed the duties required of him as executor, which question if answered in the negative would require an answer to the further question submitted as to the rental value of a hotel, farm, and blacksmith shop. The jury answered the first question in the affirmative, and to the second question no answer was given. The court entered its decree accordingly. The cross-bill of exceptions then recites that the plaintiffs "then and there excepted to said questions and the decree entered thereon, for the reason said questions involved a mixed question of law and fact; . . and said decree was error for the reason said questions were erroneous, it being admitted by Andrews . . that he did not offer or try to rent the property," and that he had cultivated the farm land himself, and his wife had operated the hotel; and that the uncontradicted evidence showed the hotel property to be worth $15 per month rent, and the farm $50 per year. The judge appended a note stating that there was evidence tending to show that no profit was made in the operation of the farm and hotel, but that Andrews operated them for the purpose of preserving the "good will" of the business, and that no motion for new trial was made by the plaintiffs. Error was also assigned on that portion of the decree of the court holding that the plaintiffs were not entitled to take property in kind, but were entitled to the residue solely according to the terms of the will. It appears further in the cross-bill, that, "plaintiffs in error in the main bill of exceptions having specified all the record in said case necessary to a clear understanding of the errors alleged in this cross-bill, the same are now referred to as such, and, having incorporated in this cross-bill of exceptions, all the evidence necessary to a clear understanding of the errors complained of, present this cross-bill," etc. A cross-bill of exceptions is a remedy provided for the successful party in a verdict and judgment, to have reviewed adverse rulings made during the trial, in the event his adversary is successful in obtaining a judgment in the Supreme Court which in its effect leaves the case to be tried again in the trial court. "It is not the function of the cross-bill to review previous rulings adverse to the plaintiff in

error in the cross-bill, .where the *verdict and judgment* based on such adverse rulings were also adverse to such plaintiff in error. ·In such a case, an independent bill of exceptions is the proper remedy. 'The cross-bill of exceptions . . could properly assign error only upon such rulings of the court as were adverse to [the plaintiff in error] *and related to the particular judgment which the court finally rendered in [his] favor, and which is complained of by the opposite party in the main bill of exceptions.'"* Robinson v. *Georgia Savings Bank & Trust Co.*, 185 *Ga.* 688 (196 S. E. 395), and cit. The cross-bill of exceptions in the instant case, containing no assignments of error on any rulings which, in view of the above rulings, are properly contained in a cross-bill of exceptions, can not be considered.

*Judgment affirmed on the main bill of exceptions; cross-bill dismissed. All the Justices concur, except Grice, J., disqualified.*

ATKINSON, P. J., concurs in the result. On motion. for rehearing, RUSSELL, C. J., dissents.