1. Where in the nuncupative will here involved the testator declared in item 7 that he wanted the petitioner to have the "Allen Place," containing 70 acres, more or less, but in item 12 directed that she and each of the other children to whom he had willed certain parcels of land, respectively, pay to his widow the "usual annual rents" therefrom *Page 482 
during her lifetime, the will, properly construed, devised to the widow a life estate in such "Allen Place" with remainder to the petitioner.
2. The executors having assented to such devise and delivered to the life tenant the land sued for, such assent perfected the inchoate title of the devisee and became irrevocable by the executors. In such a case, however, an unpaid creditor may follow the land into the hands of devisees and subject it at law or equity to the payment of his claim.
3. After such assent the land ceased to be a part of the estate of the testator and could not be sold by the executors to pay any debts thereof, and a court of ordinary has no power or jurisdiction to order the land sold as part of the estate. Such order, being void, may be attacked anywhere and at any time.
4. Such assent inures to the benefit of the remainderman who, at the termination of the life estate, may take possession immediately, unless the will provides for a sale or other act to be done for the purpose of effecting a division among remaindermen.
5. The deed of the plaintiff in error, conveying to him land which included that here sued for, and which was in a chain of title that originated in a deed made pursuant to an order of the court of ordinary to sell such land as part of the estate of the petitioner's testator, conveyed no title as against the petitioner, since prior to such order of the court of ordinary the land had been delivered to the life tenant with the assent of the executors and thereafter formed no part of the estate.
6. No prescriptive title ripened in the defendant under such deed as color of title with more than seven years' alleged adverse possession of himself and his predecessors in title, since such possession did not run against the petitioner as remainderman until the death of the life tenant, which the petition, filed on October 15, 1946, alleged occurred on August 2, 1946.
7. The petition alleged a cause of action for recovery of the land devised to the petitioner as remainderman and for annual rents of $250, and the court did not err in overruling the general demurrer.
8. The evidence supported the allegations of the petition as amended and demanded a verdict for the petitioner for the land sued for and annual rents of $250, and the court did not err in directing such verdict and entering judgment accordingly.
(a) While the evidence showed that the life tenant voluntarily surrendered the land to the executors, in accordance with an agreement between her and the adult children, her action was not binding upon the petitioner, who was at the time an infant of about 7 years of age and not represented by a guardian.
 No. 16420. NOVEMBER 17, 1948.
Mrs. Grace Yancey Gladin filed in the Superior Court of Gwinnett County, Georgia, on October 15, 1946, a petition against Leo Biggers, alleging substantially the following: The defendant is in possession of described property in the 5th land district of *Page 483 
Gwinnett County, known as the Allen Place. The petitioner claims title to the said land as the daughter and devisee under item 7 of the will of her father, James Robert Yancey, who died on February 26, 1920, in possession of the land, and at which time the petitioner was an infant three years of age, the petitioner's mother and widow of James Robert Yancey having died on August 2, 1946. The two sons named as executors in item 10 of the said will qualified as such and made an inventory of the said estate showing a valuation of $24,190 in land and $13,565 in personalty, a total of $37,755 Shortly thereafter, in accordance with the provisions of the will, the said executors assented to benefits and devises in the will, paid to themselves the money bequeathed to them, and subdivided and surveyed the land into the several parcels devised in the said will to the other children of the testator and delivered possession thereof to each of them, and each of them went into the possession thereof respectively. At the time of the said subdivision, the petitioner was an infant about four years of age, no guardian had ever been appointed for her, her mother went into possession of the said Allen Place, her interest being a life estate therein, and she remained in possession and paid taxes on the land for several years and until she gave up possession on a date and for a reason unknown to the petitioner, due to her infancy aforesaid. The petitioner and the defendant claim under the same propositus, James Robert Yancey. The defendant has received the profits of the said land since the date of the death of the petitioner's mother, the same being of the yearly value of $1000. The defendant refuses to deliver possession of the land or to pay the petitioner the yearly value thereof.
Annexed to the petition was an abstract of title which the petitioner claimed to the land, the same being a reference to the devise to the petitioner under the will which is shown to have been probated in solemn form, Minute Book N, page 234, and recorded in Will Book F, page 60, the will being attached and showing that it was a nuncupative will expressed to witnesses on February 25, 1920, and reduced to writing on March 5, 1920, and reciting as follows: "First. He wanted all his just debts paid. Second. He said he wanted his wife, Mary Yancey, to have his home place where he then lived for and during her natural *Page 484 
life. Third. He said that he wanted his three children, Lena, Lovic, and William, to have one hundred acres of land on the west side of the first 100 acres he bought of what is known as the `Stray lot.' He said that he wanted this one hundred acres of land divided between them by running the lines straight across north and south, and gave Lena Roberts the thirty-three and one-third acres next to T. T. Kennerly, and Lovic the next thirty-three and one-third acres, and William the next thirty-three and one-third acres. Fourth. He said he wanted his son, Cephus Yancey, to have the remaining 50 acres more or less of this tract, it being the place where John Hudson now lives. Fifth. He said he wanted 25 acres cut off of the east end of the 100 acres more or less and that he later bought of this `Stray lot' by running the line north and south, and he gave this 25 acres to his son, Calvin Yancey, this being the place where Calvin now lives. Sixth. He said that he wanted his two children, Carl and Grace Yancey, to have the remaining 75 acres more or less that he owned of this `Stray lot.' This seventy-five acres more or less to be divided equally between them. Seventh. He said that he wanted his daughter, Grace Yancey, to have what is known as the Allen Place, containing seventy acres of land more or less. Eighth. He said that he wanted his son, Carl Yancey, to have the right to live in the house where he is now living as long as he might want to. This only applies to the house and not to any of the land. Ninth. He further said that he wanted all his children to keep the land that he had willed them during their lifetime. Tenth. He said that he wanted his two sons, Philo A. and Grover A. Yancey, to have three thousand dollars each in cash. Eleventh. He said that he wanted the seven acres of land more or less, known as part of the Bennett place, to be turned over to the deacons of Chestnut Grove Baptist Church for the next twenty years, and that said land should be rented by the said deacons, putting one year in cotton and the next year in peas, and that all the annual income and rents from said land to be used for the benefit of said Chestnut Grove Baptist Church during said twenty years. Twelfth. He said that he wanted and so willed and directed that each of his children should pay the usual annual rents on the lands he had willed to them to his wife, Mary Yancey, for her support and maintenance during her lifetime; that *Page 485 
he wanted all his children to pay rents, and as he had willed three thousand dollars in cash each to his sons, Philo A. and Grover A. Yancey, that they should pay as rents like the other children what would be a reasonable rent on said money if in land like that given to the other children. He said this was the provision that he was making to take care of his wife during her lifetime, and he wanted all the children to pay her the usual rents for her support and maintenance during life and to keep up the home that he had given her for life. Thirteenth. He said that he wanted all the balance of the property he might own not before mentioned to be sold and after paying his debts and the legacies mentioned in this will that the balance be divided equally between all his children. Fourteenth. He said that he wanted Philo A. and Grover A. Yancey, his sons, to act as executors of this will."
By amendment, it was alleged that the defendant claimed title to the land originating in a deed from the said executors of the testator, executed under order of the Ordinary of Gwinnett County on application for sale, for the purpose of the payment of the debts of the testator, of three parcels of land, including the land claimed by the petitioner, after citation was issued and published, and by virtue of which a public sale was had by the executors on the first Tuesday in November, 1924, and a deed was made by them to J. C. Yancey with the recitals of the proceedings before the ordinary. The defendant claims under chain of title of subsequent deeds from J. C. Yancey, the purchaser at the said sale, the deeds being duly recorded. The defendant further claims prescriptive title under the said deeds since November, 1936, by virtue of open, continuous, and adverse possession of the land under color of title by himself and his predecessors in title under the said deeds, the said possession of all having been actual, adverse, and exclusive as against any claim or right of the petitioner. The defendant further claims title to the land on the ground that the petitioner has been grossly negligent in not asserting her claim before this time, and has been guilty of laches in not presenting her claim earlier and she is now barred from recovering the land. The petitioner alleges that at the time of the said proceedings in the court of ordinary and of the said sale by the executors her mother was in adverse possession *Page 486 
of the said Allen Place by virtue of the distribution and subdivision by the executors of the said estate, and the petitioner has received no benefit whatever or distributive share from the estate of her father.
The defendant demurred to the petition as amended on the grounds: (1) that no cause of action was set out, and (2) the petition as amended shows that the petitioner has no right or title to the property, and further shows on its face that the legal title to the same is vested in the defendant. This demurrer was overruled and exceptions pendente lite were duly certified and filed.
The defendant filed an answer denying that the petitioner had any right or title to the land sued for and set up the following: At the time of the death of the testator he was insolvent and owed debts amounting to more than the assets of his estate. After probate of the will the duly qualified executors — after proper proceedings before the court of ordinary as recited in the answer, resulting in a judgment by the court of ordinary that it was necessary to sell the land here involved and other land of the estate, and granting leave to sell the same to pay indebtedness of the estate, and after due citation and publication — sold the said land at public sale, during the legal hours of sale, at the courthouse door in Lawrenceville, Georgia, to J. C. Yancey on the first Tuesday in November, 1924. J. C. Yancey obtained from Federal Land Bank a loan of $6000, securing the same with a deed to secure debt and with a power of sale therein. The said $6000 was paid to the executors and was used to pay indebtedness of the estate. Federal Land Bank was a bona fide purchaser for value, without notice of any irregularities in said sale, if any. Thereafter the indebtedness due the bank became in default, and the said bank, exercising its power of sale, and after proper publication according to law, and under the terms of the security deed, exposed the land for sale at the courthouse door in Lawrenceville, Georgia, during the legal hours of sale, on the first Tuesday in November, 1935, and became the purchaser at such sale, going into possession and remaining in possession until July 13, 1937, when the bank sold the land to A. C. Burton by duly recorded deed. The said A. C. Burton was a bona fide purchaser for value of the said land and entered into possession *Page 487 
thereof, dying on February 19, 1943, and leaving a will, which was probated in solemn form at the April term, 1943, of the Court of Ordinary of Gwinnett County, Georgia. Under the terms of his will the land sued for was devised to his widow for life with remainder to her two daughters. Leo Biggers acquired the title to the said land from the said widow and two daughters by a warranty deed, dated December 28, 1945, duly recorded, and was a bona fide purchaser for a valuable consideration. Since November, 1935, the defendant and his predecessors in title have been in the open, continuous, and adverse possession of the land under color of title derived from the deeds hereinbefore mentioned, and their possession has been actual and adverse, and so exclusive as to be notice to all the world that they were claiming the exclusive right to the possession and title to the said land. If the petitioner had any claim or right to the land, she has been grossly negligent in not asserting her claim before this time, and has been guilty of laches in not presenting the same earlier, and is now barred from recovering the land. The defendant, not only has a perfect legal and equitable title to the land, but has a prescriptive title because of seven years' actual and adverse possession of the land by himself and his predecessors in title under color of title.
By amendment, the defendant alleged the following: At the time the executors applied to the court of ordinary for leave to sell the real estate, including the land here involved, the debts of the estate exceeded the value of the remaining assets, including the land here involved. Even if the executors had at any time previously assented to the legacies in the will, all of the said land was still subject to the indebtedness of the estate, and as a matter of law the creditors of the estate could follow the lands into the hands of the devisees and subject it to the payment of their claims. The executors, devisees, and the widow of the testator all agreed that unless something was done all of the land, including the home place of the widow and minor children, would be lost to pay the indebtedness, and decided that the only way the land and the home could be saved for the devisees was to sell the land at public sale through order of the court of ordinary, and agreed that unless there was a higher and better bid, J. C. Yancey, one of the children, should buy the property at the *Page 488 
said sale, take title in himself, and secure a loan from Federal Land Bank of Columbia for $6000 and apply the proceeds of the loan to the indebtedness, and with the understanding that when the loan was paid the land would be reconveyed to the devisees according to their interests under the will, and that he would execute bonds for title to the various devisees. The land was sold by the executors at public sale and J. C. Yancey was the highest and best bidder. To carry out the sale plan, all the devisees, including the widow, acting for her minor children as well as for herself, and acting in what she considered the best interests of the children, consented to the sale by the executors and thereby surrendered the control of the lands back to the executors for the purpose of sale, irrespective of any assent by the executors. The said sale divested any interest the widow had in the land here involved by reason of the said will and any assent of the executors, and also divested any interest of the petitioner in the land. Since the land was subject to the indebtedness and was about to be so subjected, the petitioner was not harmed by the method of sale, but was benefited thereby, and did benefit thereby, and at no time since she has reached the age of majority has she undertaken or offered to restore any benefits which she received thereunder. She was neither hurt nor injured by such sale because the land was subject to the indebtedness and would have been lost to the lien of the creditors anyway, the sale benefited her for the reason that she was thus provided a home for an additional three or four years, and the proceeds from the loan from the bank were used to extinguish the indebtedness of the estate by settling at less than the face value thereof. Since the petitioner became of age on June 14, 1937, she has never taken any action to disaffirm the acts of her mother and the executors in her behalf, but for more than seven years after attaining her majority has remained silent and acquiesced in their acts, and has thus permitted the land to pass into the hands of innocent purchasers for value and has thereby ratified the said acts and estopped herself from now asserting any claim to the land. It would now be contrary to equity, justice, and good conscience to permit her to recover the land, and especially so without restoring or offering to restore the value of the benefits received by her therefrom. *Page 489 
Upon the trial the following facts were stipulated by the parties: The defendant is in possession of land known as the Allen Place. The petitioner bases her title under the will of James Robert Yancey, a copy of which was attached to the petition. He was her father and departed this life on February 26, 1920, in possession of the land sued for and referred to in item 7 of his will. At the time of his death the petitioner was an infant of three years of age. The petitioner's mother, Mrs. James Robert Yancey, died on August 2, 1946. The executors named in the will qualified as such, and the records show that the appraisers made an inventory of the estate, showing a valuation of $24,190 of land and $13,565 of personalty, dated April 21, 1920. The allegations of the petition that "Petitioner shows that she was an infant of about 4 years old at the time of the subdivision, and that no guardian was ever appointed for her, and that her said mother went into possession of the above described Allen Place claiming the same under said will, her interest being a life estate therein, and she remained in possession thereof and paid taxes thereon for several years and until she gave up possession thereof on a date and for a reason unknown to petitioner, due to her infancy, as aforesaid," are admitted except it is not admitted that the petitioner's mother had a life estate in the land or went into possession thereof. The petitioner and the defendant claim under a common propositus, James Robert Yancey. The yearly value of the land is $250. The defendant bases his title under a deed from the executors of the estate of James Robert Yancey, executed on application to the ordinary for sale for the recited purpose of paying debts of the estate of three parcels of land, including the land sued for, and after citation, publication, and public sale by the executors on the first Tuesday in November, 1924, the deed was made to J. C. Yancey, with recitals of the foregoing requisite preliminary proceedings, for a named consideration of $4825. Subsequent deeds under which the defendant claims title are as follows: Security deed from J. C. Yancey to Federal Land Bank of Columbia, dated December 27, 1924, consideration $6000, duly recorded, covering land including that sued for. Deed from J. C. Yancey, by Federal Land Bank of Columbia, as attorney in fact, to Federal Land Bank of Columbia, dated November 5, 1935, duly recorded, *Page 490 
consideration $4500, pursuant to foreclosure under power of sale, covering land including that sued for. Limited warranty deed from Federal Land Bank of Columbia to A. C. Burton, dated July 13, 1937, consideration $1250, duly recorded. Devise under will, dated October 9, 1942, duly probated in solemn form at April term, 1943, Court of Ordinary, Gwinnett County, A. C. Burton to Mrs. Vada Burton (wife), Hazel Burton Cofield and Ruth Burton, daughters, all property, including land sued for. Warranty deed from Mrs. Vada Burton, Hazel B. Cofield, and Ruth Burton Duke, dated December 18, 1945, consideration $3000, to Leo Biggers, duly recorded, conveying the land sued for. Security deed from A. C. Burton to Federal Land Bank of Columbia, recorded July 24, 1937, canceled December 12, 1943. Since November, 1935, the defendant and his predecessors in title have been in the open, continuous, and adverse possession of the land under color of title derived from the deeds hereinbefore mentioned, and their possession has been actual and adverse and so exclusive as to be notice to all the world that they were claiming the exclusive right to the possession and title to the said land. However, the petitioner claims that the said possession did not ripen into a prescriptive title as against her because of her minority, and the contention that the widow of the testator had a life estate and claim to the said land, and, hence, the petitioner's rights as a remainderman did not mature until the death of the life tenant on August 2, 1946, and prescription would not mature against the petitioner until seven years thereafter.
T. A. Downs testified for the petitioner: He rented from Mrs. James Robert Yancey, widow of the testator, the land sued for. He thinks it was in 1922.
H. I. Moulder testified for the petitioner: He rented the land from Mrs. Yancey in 1925, 1926, and 1927.
G. A. Yancey testified for the petitioner: He is a son of the testator, and he and his brother, Philo A. Yancey, were executors of the estate. They divided and delivered, after survey, the respective lands as provided in the will. The petitioner was at that time, about September 21, 1920, a baby. They delivered to the mother the Allen Place here sued for, and in the fall of 1920 she went into possession of it, the home place, and Cephus' *Page 491 
land, 132 acres, and stayed in possession, giving it in for taxes in her name. They were carrying out the terms of the will, and after delivering the land to the widow and the children they did not exercise any authority over it. They delivered the land here sued for to the widow for the petitioner, and at the time believed that the estate was solvent and more than sufficient to pay all debts. Later it developed that the estate owed some debts, mainly by reason of the testator having endorsed notes for certain persons as an accommodation. It was decided to sell certain lands, including the land sued for, after applying to the court of ordinary, it having been arranged for one of the brothers to bid it off, obtain a loan of $6000 from Federal Land Bank of Columbia, each of the children to pay a certain amount with interest until the loan was paid. The land was sold and the proceeds used in paying debts of the estate, but perhaps some were never paid.
Philo A. Yancey testified for the petitioner substantially as did G. A. Yancey. They further testified that the matter of selling the land to pay indebtedness of the estate was discussed with their mother and the other adult children and they all agreed, and they acted on advice of counsel as to a loan from the bank being the best solution. J. C. Yancey was selected as the one to put the loan through. Each child was to hold his land. pay the taxes, his part of the loan and interest. During the time his mother and the petitioner lived on the home place, his mother rented the land sued for and collected the rents and paid all taxes and interest on the loan. She moved away when J. C. sold the property. Until that time, and after the loan was obtained, each remained in possession of the land devised to him and paid the taxes on it. Between 1926 and 1928 the mother moved from the land, the home place.
Lovic Yancey testified that, when the land was subdivided, he received his interest, made tax returns and paid the taxes.
The petitioner testified: She was three years old when her father died. She has never received anything from his estate. She thinks that it was in 1927 when she and her mother moved. She was born June 14, 1916, and if her mother did not move until 1928 she would have been 12 years old.
William Yancey testified for the petitioner that he was one *Page 492 
of the children to whom land was delivered, after which he returned it for taxes, accepting it as his own. When the executors sold the land of the estate in 1924, a deed was made to his brother, J. C. Yancey. It was understood that he would bid on it and give the other children a bond for title, and all were consenting that the land be sold in that manner to try to save the property.
L. E. Biggers, the defendant, testified: He is in possession of the land sued for, having bought it from Mrs. Burton and her two daughters, Mrs. Cofield and Mrs. Duke, paying for it $3000 on December 25, 1945, the day the deed was made. He was never advised that there was outstanding on the record a deed from A. C. Burton to Federal Land Bank of Columbia.
The petitioner introduced in evidence: the will of James Robert Yancey, a copy of which has been hereinbefore set out; the inventory and appraisement of the estate; a line in the 1924 Tax Digest of Gwinnett County showing the tax return of Mrs. J. R. Yancey of 132 acres of land, value $2000, with notation, "Off to J. C. Yancey."
The defendant introduced the following documentary evidence: The application to the court of ordinary for leave to sell the land, including that sued for, the order of the ordinary, citation, order to sell, and deed from the executors dated November 4, 1924, duly recorded, and reciting the proceedings had before sale, and further reciting that J. C. Yancey was the highest and best bidder for the sum of $4825. Deed from J. C. Yancey to Federal Land Bank of Columbia, dated December 27, 1924, duly recorded, conveying the land here sued for, with other land, reciting that it was given to secure a loan of $6000, and conferring power of sale in the event of default. Deed by J. C. Yancey, acting through his attorney in fact, Federal Land Bank of Columbia, to Federal Land Bank of Columbia, duly recorded, conveying, among other lands, the land sued for, with recitals as to default, advertisement for sale, sale, etc. Deed from Federal Land Bank of Columbia to A. C. Burton, dated July 15, 1937, duly recorded, conveying the land here sued for, the deed reciting a consideration of $1250. Deed from A. C. Burton to Federal Land Bank of Columbia to secure an indebtedness, dated July 13, 1937, duly recorded and marked *Page 493 
canceled of record December 27, 1945, by proper authority. Deed from Mrs. Vada Burton, Hazel Burton Cofield, and Ruth Burton Duke, to Leo E. Biggers, dated December 28, 1945, duly recorded, conveying the land here sued for and reciting a consideration of $3000, and also reciting that the land conveyed was the first tract of land described in item 4 of the will of A. C. Burton, deceased, duly probated in solemn form at the April term, 1943, of the Court of Ordinary of Gwinnett County, Georgia, under which will the land was devised to Mrs. Vada Burton for her natural life and at her death to her two daughters, Hazel B. Cofield and Ruth Burton Duke, in remainder.
At the conclusion of the evidence, the court directed a verdict for the petitioner for the land and annual rents of $250, and judgment was entered accordingly.
The defendant filed a motion for a new trial on the usual general grounds, and by amendment added a special ground complaining of the direction of the verdict for the petitioner, contending that "there were issues of fact made by the evidence which should have been submitted to the jury for determination, and because said verdict as directed was against the weight of the evidence and without the evidence to support it;" and also, because "there were issues of fact made by the evidence which should have been submitted to the jury for determination, and because said verdict as directed was against the weight of the evidence and without evidence to support it;" and right to recover in said case, under every theory of the case, depended upon whether or not the executors of the estate of James R. Yancey, deceased, had unconditionally, and without the mixture of any fraud, assented to the devises in item 7 of the will, and it was a question for the jury to determine from all the evidence in the case whether or not such unconditional assent had been made, and whether such assent, if made, had been mixed with fraud."
The court overruled the motion for a new trial, and the defendant excepts, assigning error on the exceptions pendente lite to the judgment overruling the demurrer and on the judgment overruling the motion for new trial.
1. The will under which the petitioner claims is not drawn with precise legal language which is usually employed in more formal wills, but is a nuncupative one, recording the testamentary wishes as expressed to witnesses to the instrument. Nevertheless, in so far as it is not against public policy and law it will be given full effect according to the intention of the testator, and this intention must be ascertained by taking the will, as it is said, "by the four corners" and giving to all parts of it consideration. Shoup v. Williams, 148 Ga. 747 (1) (98 S.E. 348); Yerbey v. Chandler, 194 Ga. 263, 265 (21 S.E.2d 636);Young v. Young, 202 Ga. 694, 702 (44 S.E.2d 659). Looking at the entire will, we construe its provisions as indicating the wishes of the testator as follows: He wanted the wife to have the home place during her lifetime, thereby giving her a life estate in such property. He recognized, however, that she would require sufficient income for her support, maintenance, and upkeep of the home. He wanted the children to have the respective lands only after the death of the widow, and not to become vested at his death with a fee-simple title which would exclude the widow from all benefits therein. To provide a sufficient support and maintenance during her lifetime, he wanted her to have the income from such lands in the form of the "usual annual rents," just as if a "life estate" had been willed in terms and she herself should take possession and arrange for the production of income by rentals. Desiring, however, to relieve her of the burden of renting the lands, he chose to place them in the hands of the children as tenants of the widow, the life tenant, the status of each child to be that of a remainderman. These lands were inferentially capable of producing the "usual annual rents," and the testator desired that she receive for her support and maintenance, not merely a given sum and no more, but the full income, the "usual annual rents," which he doubtless deemed adequate. This appears from the fact that, while providing in item 13 for the sale of any property owned by him but not mentioned in his will, he excluded his wife from participating in any of the proceeds. The direction in item 12 did not amount to a charge upon the lands in the nature of a trust, as contended by the plaintiff in error, with citations of cases like Bell v.Watkins, *Page 495 104 Ga. 345 (30 S.E. 756), and Prince v. Barrow, 120 Ga. 810
(48 S.E. 412), where direction was given that the devisee pay to another a sum which was less than the annual income. In the present case, the widow was to receive the entire income in the form of the "usual annual rents." Such a provision created a life estate in the widow. Code, § 113-805; Gilmore v.Gilmore, 197 Ga. 303 (3) (29 S.E.2d 74); Roberts v.Wilson, 198 Ga. 428, 435 (31 S.E.2d 707).
It is urged by the plaintiff in error that the view that a life estate was intended by the testator for the widow with remainder to the children respectively can not be reconciled with the provisions of item 10 that Philo A. Yancey and Grover A. Yancey be given $3000 each in cash, and the direction in item 12 that they should "pay as rents like the other children what would be a reasonable rent on said money if in land like that given to the other children," it being urged that, if a life estate was granted in the lands, it was also granted in the money bequeathed to the two sons, and yet it would be unreasonable to assume that the testator would exact such requirement from them if he did not intend that they have the immediate use, possession, and control of the money. To sustain the view that a life estate was granted to the widow in the lands as above mentioned, it is not necessary to reach the same conclusion as to the money directed to be paid to the two sons. Whether or not such a bequest was one encumbered with a charge in the nature of a trust need not be decided. It might be added, though we make no ruling here as to this bequest, that a life estate and a remainder interest may be created in money. In Crawford v. Clark, 110 Ga. 729, 732 (2) (36 S.E. 404), it was said: "A remainder can be created in money.Thornton v. Burch, 20 Ga. 791 (3), 793; Chisholm v.Lee, 53 Ga. 611; Phillips v. Crews, 65 Ga. 274 (2);McCook v. Harp, 81 Ga. 229; Gairdner v. Tate, ante, 456. In Phillips v. Crews, where the law is clearly stated, the court held as follows: `A life estate in money, with a remainder over, may be created. Money may be lost but it should not be destroyed in the use.' And also that section 2253 of the Code of 1873 (now Civil Code, § 3088 [Code of 1933, § 85-602]), prohibiting the creation of a remainder in property that is destroyed in the use, `does not allude to money but to such things as perish with the usage.'" *Page 496 
2-5. But it is contended by the plaintiff in error that he is an innocent purchaser for value and is protected by the order of the court of ordinary referred to in the petition, granting the executors leave to sell lands, including that sued for here, for the purpose of paying debts of the estate. The application did not, however, raise any issue as to title, and the order of the court of ordinary did not put any title in the estate that was not already there. The petition alleges that the assent of the executors had been given and the land here involved delivered to the life tenant. Assent by the executor to a devise, with certain exceptions not here involved, perfects the inchoate title and is irrevocable by the executor. Citizens Bank of Vidalia v.Citizens So. Bank, 160 Ga. 109, 117 (127 S.E. 219);Wilson v. Aldenderfer, 183 Ga. 760 (3) (189 S.E. 907). See also Peoples National Bank v. Cleveland, 117 Ga. 908 (6) (44 S.E. 20); Matson v. Crowe, 193 Ga. 578, 581
(19 S.E.2d 288). In such a case, however, an unpaid creditor may follow the land into the hands of devisees and subject it at law or equity to the payment of his claim. McNair v. Rabun,159 Ga. 401, 409 (126 S.E. 9); Wilson v. Aldenderfer, supra;Trustees of Williams Hospital v. Nisbet, 191 Ga. 821, 850
(14 S.E.2d 64). The assent inures to the benefit of the remainderman who, at the termination of the life estate, may take possession immediately, unless the will provides for a sale or other act to be done for the purpose of effecting a division among remaindermen. Code, § 85-709; McGlawn v. Lowe, 74 Ga. 34;Miller v. Harris County, 186 Ga. 648, 651
(198 S.E. 673). See also Almand v. Almand, 141 Ga. 373
(81 S.E. 228); David v. David, 162 Ga. 528 (3) (134 S.E. 301). The order of the court of ordinary, in permitting the land to be sold for the payment of debts, adjudicated that it was necessary to sell the lands to pay debts of the estate, but did not adjudicate title. Since no adjudication was made as to title, the plaintiff in error and his predecessors in title could not rely on that order to sustain the contention that they held title and were innocent purchasers for value. In Watkins v. Gilmore,121 Ga. 488, 490 (49 S.E. 598), it was said: "At the time the ordinary granted the order and recited therein that the land had reverted to the estate of the testator, the land had not reverted and was no part of the estate. The assent of the executors perfected the inchoate title of the *Page 497 
devisees, and at the death of G. W. Watkins the remainderman had the right to take immediate possession. This land was no part of the estate, and the order to sell it was void for want of jurisdiction. Such order, being void, could be attacked anywhere and at any time. The title to the land having passed out of the estate into the devisees, the executors have no right to recover it as part of the estate. The ordinary's order to sell can not give the estate any title to the land nor give the executors any right to recover it when it is no part of the estate. Whortonv. Moragne, 62 Ala. 201. That order may have adjudicated as against the world that it was necessary to sell land of the estate to pay debts or for distribution, but it did not vest in the estate the title to any land which was no part of the estate. After the assent of the executors and the death of the life-tenant, the land in controversy was the property of the remaindermen, and the title vested in them as completely, as against the estate and the executors, as though it had never formed any part of the estate. The order to sell the land as part of the estate could not change the title nor give the executors the right to recover land which was not part of the estate nor subject to sale by the executors to pay debts or for distribution." See also Pope v. Stanley, 202 Ga. 180, 185
(42 S.E.2d 488).
6. Nor does the petition show, as contended by the plaintiff in error, that he has prescriptive title under color of title and adverse possession of him and his predecessors in title for more than seven years. It is alleged that the widow, the life tenant of the property here sued for, died on August 2, 1946. Prescription does not run against a remainderman until the death of the life tenant. Brinkley v. Bell, 131 Ga. 226 (5) (62 S.E. 67); Sikes v. Moxley, 201 Ga. 76 (38 S.E.2d 671);Folds v. Hartry, 201 Ga. 783, 787 (41 S.E.2d 142). Since the present action was brought on October 15, 1946, it is obvious that seven years had not elapsed since the death of the life tenant on August 2, 1946.
Nor is there any merit in the contention that the petitioner is guilty of laches, since as remainderman she had no cause of action against any purchaser until she acquired a right of entry and possession by the death of the life tenant on August 2, 1946.Glore v. Scroggins, 124 Ga. 922, (3) (53 S.E. 690);Mathis v. *Page 498 Solomon, 188 Ga. 311, 312 (4 S.E.2d 24); Gurr v. Gurr,198 Ga. 493, 503 (32 S.E.2d 507).
7. It follows from the above that the petition as amended shows a cause of action in the petitioner to recover the land in question, as well as the rental value thereof, and the court did not err in overruling the defendant's general demurrer.
8. The evidence, which has been fully set out in the preceding statement of facts, amply supported the allegations of the petition as amended, and demanded a finding that the petitioner was entitled to recover the land sued for and annual rents of $250. The court did not err in directing a verdict and entering judgment accordingly.
(a) While the evidence shows that the life tenant voluntarily surrendered the land to the executors, in accordance with an agreement between her and the adult children, her action was not binding upon the petitioner, the remainderman, who was at the time an infant of about 7 years of age and not represented by a guardian.
Judgment affirmed. All the Justices concur.