Alonzo Wimberly JENKINS, Jr., et al., as Executors under the Will of Martha O. Jenkins, Deceased, Plaintiffs-Appellees,

v.

UNITED STATES of America, Defendant-Appellant.

No. 27769.

United States Court of Appeals, Fifth Circuit.

April 20, 1970.

As Amended on Denial of Rehearing June 1, 1970.

Certiorari Denied Oct. 12, 1970.

See 91 S.Ct. 59.

Floyd M. Buford, U. S. Atty., Macon, Ga., Walter J. Tribbey, Dept. of Justice,

Johnnie M. Walters, Asst. Atty. Gen., Lee A. Jackson, Thomas L. Stapleton, Jr., John S. Stephen, Attys., Tax Div. U. S. Dept. of Justice, Washington, D. C., for appellant.

Alan F. Rothschild, J. Madden Hatcher, Max R. McGlamry, Columbus, Ga., for appellees.

Before GOLDBERG, DYER and CARSWELL, Circuit Judges.

GOLDBERG, Circuit Judge:

We consider here the application of federal estate tax provisions to an unexercised and evanescent power of appointment. The executors of the estate of Martha O. Jenkins seek approval of the decision below excluding from the decedent's estate the value of certain property subject to a power of appointment. Though equitable considerations invite us to affirm the ruling below in an effort to ameliorate the apparent harshness of the tax in this particular case, legal imperatives leave us no choice but to reverse and hold that the tax must be paid.

This case grew out of the lives—and deaths—of two sisters, Ada Lee Jenkins and Martha O. Jenkins. These sisters, both of whom were unmarried, lived together in Midland, Georgia, for many years prior to their deaths. Although they owned a substantial amount of property, they lived in a simple, frugal manner. On December 23, 1958, both

sisters, who were then in their seventies, executed wills. These wills were very similar in wording and provisions, each sister leaving the other a life estate coupled with a power of invasion or consumption over the testatrix's property.

On September 24, 1962, Ada Lee Jenkins died. Shortly after her sister's death Martha O. Jenkins decided that she did not wish to serve as executrix under her sister's will, and on October 4, 1962, she executed a document renouncing her designation as executrix. She apparently took no other action with regard to the will of her sister. Although she had previously been in good health, on October 10, 1962, Martha suffered a heart attack, and on the following day she died. Because of the short period of time—only seventeen days—between the deaths of the two sisters, Ada's will had not been probated at the time of Martha's death. The wills of both sisters were filed and admitted for probate on October 25, 1962. Two nephews of the sisters, Alonzo Wimberly Jenkins, Jr., and McLendon Wash Jenkins, qualified as the executors of both estates.

The will of Ada Lee Jenkins contained several provisions leaving her surviving sister a life estate coupled with a power of invasion or consumption over certain real and personal property located in Muscogee County, Georgia. Each of the relevant provisions of the will[1] included

1. In their entirety the relevant clauses of the will provided as follows:

"ITEM THREE. Should my sister, Martha O. Jenkins, survive me, then and in that event, I give and bequeath to her my Chantilly silverware, to have, hold, use and enjoy for and during her natural life with full and unlimited power and authority to dispose of the same in fee simple, by gift, or otherwise, at any time during her life without accountability to any one. And should my sister not dispose of my Chantilly silverware, then on her death the same shall pass to and become the absolute property of my nieces, Mary Anne Jenkins Thatcher and Ruth Jenkins Waggener, share and share alike; but, if either of my nieces, or both of them,

shall be not then in life, the share of the Chantilly silver which would have passed to said deceased niece or nieces had they then been in life shall pass to, and vest absolutely in, the daughter or daughters of the said deceased niece or nieces, then in life, to be shared alike by them.

\* \* \* \* \*

"ITEM FIVE. Should my sister, Martha O. Jenkins, survive me, then and in that event, I give and bequeath to Martha O. Jenkins all my right, title and interest in and to the engraved Wimberly silverware, consisting of table spoons engraved 'MEW', the large forks engraved 'MEW', the small forks engraved 'ANNIE' and the teaspoons engraved 'ANNIE', all of which are the

language substantially identical to the following:

"Should my sister, Martha O. Jenkins, survive me, then in that event,

same engraved pattern; and, also the plain Wimberly silverware consisting of small forks engraved 'ACP', the teaspoons engraved 'JCW', the teaspoons engraved 'ANNIE', and the small spoons engraved 'ACP'; all of which is the whole of the Wimberly silverware; and, also, my double case watch with long chain, and my diamond ring; to have, hold, use and enjoy for and during her natural life, with full and unlimited power and authority to dispose of the same in fee simple, by gift or otherwise, at any time during her life without accountability to any one. And should my sister not dispose of said Wimberly silverware during her lifetime, or if my sister, Martha O. Jenkins, should predecease me, then I give, bequeath and devise said property to my great niece, Martha Lee Jenkins, if then in life, but if my great Niece, Martha Lee Jenkins, be not then in life, the Wimberly silverware shall pass to and vest absolutely in and become the property of the estate of Martha Lee Jenkins.

\* \* \* \* \*

"ITEM SEVEN. Should my sister, Martha O. Jenkins, survive me, then in that event, I give, bequeath and devise to Martha O. Jenkins all my right, title and interest in and to the real estate located in Muscogee County, Georgia, in Land Lots Forty (40), Forty-one (41), Forty-two (42), Twenty-three (23), and Twenty-four (24) in the 18th District of said County, to have, hold, use and enjoy for and during her natural life, with full and unlimited power and authority to dispose of the same in fee simple by gift or otherwise at any time during her life without accountability to any one, including, but not limited to, the right to sell the timber located on said property without the consent of any one, and should my sister not dispose of my interest in said real estate during her lifetime, then on her death the same shall pass to and become the absolute property of my nephew, Alonzo Wimberly Jenkins, Jr., if he is then in life, but if he is not then in life, said real estate shall pass to, vest absolutely in and become the property of the surviving child or children of the said Alonzo Wimberly Jenkins, Jr.

I give, bequeath and devise to Martha O. Jenkins all my right, title and interest in and to \* \* \* [certain named property] \* \* \* to have,

\* \* \* \* \*

"ITEM NINE. Should my sister, Martha O. Jenkins, survive me, then in that event, I give, bequeath and devise to Martha O. Jenkins all my right, title and interest in and to the real estate located in Muscogee County, Georgia, in Land Lots Nine (9), and Eight (8) of the 18th District of said County, and Lot One Hundred Twenty-eight (128) of the 9th District of said County, to have, hold, use and enjoy for and during her natural life, with full and unlimited power and authority to dispose of the same in fee simple by gift or otherwise at any time during her life without accountability to anyone, including, but not limited to, the right to sell the timber located on said property without the consent of anyone, and should my sister not dispose of my interest in said real estate during her lifetime, then on her death the same shall pass to and become the absolute property of my nephew, McLendon Wash Jenkins, if he is then in life, but if he is not then in life, said real estate shall pass to, vest absolutely in and become the property of the surviving child or children of the said McLendon Wash Jenkins, or the surviving child or children of my nephew, Alonzo Wimberly Jenkins, Jr., in the event there are no surviving child or children of the said McLendon Wash Jenkins at the death of my sister.

\* \* \* \* \*

"ITEM ELEVEN. Should my sister, Martha O. Jenkins, survive me, then in that event, I give, bequeath and devise to Martha O. Jenkins all my right, title and interest in and to the real estate located in Muscogee County, Georgia, in Land Lots Sixty-five (65), and Sixty-six (66) of the 9th District of said County, to have, hold, use and enjoy for and during her natural life, with full and unlimited power and authority to dispose of the same in fee simple by gift or otherwise at any time during her life without accountability to anyone, including, but not limited to, the right to sell the timber located on said property without the consent of anyone, and should my sister not dispose of my interest in said real estate during her lifetime, then on her death the same shall pass to and become the absolute property of my great niece, Martha Lee

hold, use and enjoy for and during her natural life, *with full and unlimited power and authority to dispose of the same in fee simple by gift or otherwise at any time during her life without accountability to anyone,* * * * and should my sister not dispose of my interest in said [property] during her lifetime, then on her death the same shall pass to and become the absolute property of [a certain named remainderman] * * *." (Emphasis added.)

These provisions of the will led to a disagreement between the Commissioner of Internal Revenue and the executors of the estate of Martha O. Jenkins as to the amount of estate taxes due. When the executors computed and filed an estate tax return for the estate of Martha O. Jenkins, they excluded from her gross estate the value of the property in which she received a life estate with powers of invasion by her sister's will. The Commissioner, however, ruled that the value of this property must be included because Martha's powers of invasion constituted a general power of appointment over such property. After paying the additional estate taxes required by the Commissioner's ruling, the executors filed a claim for a refund. When this claim was disallowed, the executors filed suit in the United States District Court for the Middle District of Georgia, seeking a refund in the amount of $26,962.73.

As plaintiffs in the district court the executors advanced four alternative contentions in support of their position that the value of the property in dispute should not be included in Martha O. Jenkins' estate for estate tax purposes. First, they contended that Martha did not have a general power of ap-

pointment because she could dispose of the property only inter vivos and not by will. Second, they contended that her power of appointment was not a general power because it was "limited by an ascertainable standard relating to the health, education, support, or maintenance of the decedent." Int.Rev.Code of 1954, § 2041(b) (1) (A), 26 U.S.C.A. § 2041(b) (1) (A). Third, they contended that Martha did not possess an exercisable general power of appointment at the time of her death because Ada's will had not yet been probated. Finally, plaintiffs contended that requiring Martha's estate to pay the amount of estate taxes in dispute would amount to a deprivation of property without due process of law in violation of the Fifth Amendment.

The district court, hearing the case on stipulated facts, entered judgment for the plaintiffs. In its opinion the court accepted plaintiffs' first and third contentions, rejected their second contention, and did not reach the fourth. Jenkins v. United States, M.D.Ga.1968, 296 F.Supp. 203. The government appeals to this court. For the reasons hereinafter given, we are compelled to reject each of the plaintiffs' contentions, and we therefore reverse the judgment of the district court.

I.

Plaintiffs' first contention is that decedent did not have a general power of appointment because her power could be exercised only inter vivos and not by will. We reject this contention because it involves a patent misconstruction of the relevant provisions of the Internal Revenue Code.

Section 2041 of the Code [2] provides that the value of the decedent's gross

---

Jenkins, if she is then in life, but if she is not then in life, said real estate shall pass to, vest absolutely in and become the property of the estate of the said Martha Lee Jenkins."

* * * * *

2. Int.Rev.Code of 1954, § 2041, 26 U.S. C.A. § 2041, provides in pertinent part as follows:

§ 2041. *Powers of appointment*

*(a) In general.*—The value of the gross estate shall include the value of all property.

estate shall include the value of property over which the decedent at the time of his death possessed a "general power of appointment." For estate tax purposes, therefore, property over which a decedent possessed such a power is treated as if the decedent actually "owned" the property in the conventional sense. Sec-

*(1) Powers of appointment created on or before October 21, 1941.*—To the extent of any property with respect to which a general power of appointment created on or before October 21, 1942, is exercised by the decedent—

(A) by will, or

(B) by a disposition which is of such nature that if it were a transfer of property owned by the decedent, such property would be includible in the decedent's gross estate under sections 2035 to 2038, inclusive;

but the failure to exercise such a power or the complete release of such a power shall not be deemed an exercise thereof. If a general power of appointment created on or before October 21, 1942, has been partially released so that it is no longer a general power of appointment, the exercise of such power shall not be deemed to be the exercise of a general power of appointment if—

(i) such partial release occurred, before November 1, 1951, or

(ii) the donee of such power was under a legal disability to release such power on October 21, 1942, and such partial release occurred not later than 6 months after the termination of such legal disability.

*(2) Powers created after October 21, 1942.*—To the extent of any property with respect to which the decedent has at the time of his death a general power of appointment created after October 21, 1942, or with respect to which the decedent has at any time exercised or released such a power of appointment by a disposition which is of such nature that if it were a transfer of property owned by the decedent, such property would be includible in the decedent's gross estate under sections 2035 to 2038, inclusive. A disclaimer or renunciation of such a power of appointment shall not be deemed a release of such power. For purposes of this paragraph (2), the power of appointment shall be considered to exist on the date of the decedent's death even though the exercise of the power is subject to a precedent giving of notice or even though the exercise of the power takes effect only on the expiration of a stated period after its exercise, whether or not on or before the date of the decedent's death notice has been given or the power has been exercised.

*(3) Creation of another power in certain cases.*—To the extent of any property with respect to which the decedent—

(A) by will, or

(B) by a disposition which is of such nature that if it were a transfer of property owned by the decedent such property would be includible in the decedent's gross estate under section 2035, 2036, or 2037, exercises a power of appointment created after October 21, 1942, by creating another power of appointment which under the applicable local law can be validly exercised so as to postpone the vesting of any estate or interest in such property, or suspend the absolute ownership or power of alienation of such property, for a period ascertainable without regard to the date of the creation of the first power.

*(b) Definitions.*—For purposes of subsection (a)—

*(1) General power of appointment.*—The term "general power of appointment" means a power which is exercisable in favor of the decedent, his estate, his creditors, or the creditors of his estate; except that—

(A) A power to consume, invade, or appropriate property for the benefit of the decedent which is limited by an ascertainable standard relating to the health, education, support, or maintenance of the decedent shall not be deemed a general power of appointment.

\*  \*  \*  \*  \*

*(2) Lapse of power.*—The lapse of a power of appointment created after October 21, 1942, during the life of the individual possessing the power shall be considered a release of such power. The preceding sentence shall apply with respect to the lapse of powers during any calendar year only to the extent that the property, which could have been appointed by exercise of such lapsed powers, exceeded in value, at the time of such lapse, the greater of the following amounts:

(A) $5,000, or

(B) 5 percent of the aggregate value, at the time of such lapse, of the assets out of which, or the proceeds of which, the exercise of the lapsed powers could have been satisfied.

*(3) Date of creation of power.*—For purposes of this section, a power of appointment created by a will executed on or before October 21, 1942, shall be considered a power created on or before such

tion 2041(b) (1) defines a "general power of appointment" as "a power which is exercisable in favor of the decedent, his estate, his creditors, or the creditors of his estate." The statutory definition is thus cast in the disjunctive. A power of appointment is a general power under § 2041(b) (1) if the donee of the power can exercise it in favor of himself *or* his estate *or* his creditors *or* the creditors of his estate. Professors Lowndes and Kramer have succinctly described a general power in the following language:

> "A general power is a power under which the donee of the power can appoint the property subject to the power to himself, his estate, his creditors or the creditors of his estate, either directly or indirectly. *It is not necessary that he be able to appoint to all four of these objects. The power will be general if it can be exercised in favor of any one of them."* Lowndes & Kramer, Federal Estate and Gift Taxes § 12.5, at 262 (2d ed. 1962) (emphasis added, footnote omitted).

*Accord,* Estate of Rebecca Edelman, 1962, 38 T.C. 972, 977; 2 Mertens, The Law of Federal Gift and Estate Taxation § 19.09, at 519–20 (1959); Stephens & Maxfield, The Federal Estate and Gift Taxes 117–18 (2d ed. 1967); Craven, Powers of Appointment Act of 1951, 65 Harv.L.Rev. 55, 70 (1951); Comment, 51 Mich.L.Rev. 85, 92–93 (1952). See Phinney v. Kay, 5 Cir. 1960, 275 F.2d 776 (holding that an inter vivos power of disposition constituted a general power of appointment for estate tax purposes).

In the case at bar the decedent received by virtue of her sister's will a life estate in the property involved with an unlimited power of disposition. Thus she had the power to make inter vivos dispositions of the property, but she could not dispose of the property by will. In statutory terminology, she had the power to appoint the property to herself or to her creditors, but she did not have the power to appoint the property to her estate or to the creditors of her estate. In view of the definition contained in § 2041(b) (1), the fact that decedent could appoint to herself or to her creditors was sufficient to make her power of appointment a general power. Her inability to make appointments either to her estate or to the creditors of her estate was irrelevant.

Notwithstanding the express language of the statute, plaintiffs contend that a power which can be exercised only inter vivos and not by will cannot be a general power. The only authority advanced by plaintiffs in support of this proposition is the holding of this court in United States v. Bank of Clarksdale, 5 Cir. 1965, 346 F.2d 638. Plaintiffs interpret *Bank of Clarksdale* as a holding that a power of appointment cannot be a general power if it is not exercisable by will, and the court below apparently agreed with this interpretation. 296 F.Supp. at 205–206. We think it is crystal clear, however, that plaintiffs have totally misconstrued our holding in *Bank of Clarksdale.* Nothing in that case supports plaintiffs' position in the present case.

A discussion of *Bank of Clarksdale* must begin with a recognition of the distinction between "pre-1942 powers" (powers created on or before October 21, 1942) and "post-1942 powers" (powers created after October 21, 1942). The value of property subject to a pre-1942 power is includable in the gross estate only if the power was *exercised* by the decedent, either by will or by certain inter vivos dispositions. I.R.C. § 2041 (a) (1). In the case of post-1942 powers, on the other hand, the value of the property subject to the power is includable in the gross estate if the power was merely *exercisable* at the time of the decedent's death. I.R.C. § 2041(a) (2).

date if the person executing such will dies before July 1, 1949, without having republished such will, by codicil or otherwise, after October 21, 1942.

*Bank of Clarksdale* involved a pre-1942 power. A crucial inquiry, therefore, was whether or not the decedent had *exercised* her power. Moreover, since none of the parties to the litigation ever suggested that the decedent had exercised her power *during her lifetime*, the only dispute concerning this issue was whether she had exercised her power *by will*. We held that she had not exercised her power of appointment by her will and thus that she had not exercised it at all. It is important to note that this was the only issue we decided. We found it unnecessary to reach the issue of whether the decedent had in fact possessed a general power of appointment. Moreover, there is no language in that opinion which even implies that a power of appointment must include the power of disposition *by will* to be a general power. Thus plaintiffs' reliance on *Bank of Clarksdale* is completely misplaced.

In the instant case we are concerned with a post-1942 power. With regard to such a power, we need not ask whether the decedent *did* exercise the power; the only relevant inquiry is whether the decedent *could* have exercised it in favor of herself *or* her creditors *or* her estate *or* the creditors of her estate. Since it is undisputed that Martha O. Jenkins had a power which she could exercise in favor of herself or her creditors, it is clear that she possessed a general power of appointment within the meaning of § 2041(b) (1) of the Internal Revenue Code.

## II.

Plaintiffs next advance the contention that decedent's power of appointment was not a general power because it came within the "ascertainable standard" exception found in § 2041(b) (1) (A). This section provides:

"A power to consume, invade, or appropriate property for the benefit of the decedent which is limited by an ascertainable standard relating to the health, education, support, or maintenance of the decedent shall not be deemed a general power of appointment."

Plaintiffs make much of the fact that decedent had a substantial amount of property of her own and of the fact that she lived in an exceedingly frugal manner. Because of these facts, which are undisputed, plaintiffs contend that "there was no likelihood" that decedent would ever have exercised any of her powers of disposition over the property involved. Therefore, plaintiffs ask us to conclude, decedent's power of appointment was limited by an ascertainable standard within the meaning of the Code. We reject this contention, as did the court below. 296 F.Supp. at 208–210. The district court's analysis of this issue was eminently correct, and we quote with approval from the opinion below:

"In this connection the evidence shows that at the time of her sister's death Martha O. Jenkins was 82 years of age and was possessed of a substantial estate in her own right consisting of real and personal property having a value of approximately $150,000.00. The evidence further shows that the two sisters lived in a very conservative manner, growing their own vegetables and raising their own chickens and spending not more than about $5.00 a week for groceries. They wore black cotton dresses and would spend money on nothing unless it was absolutely necessary. It is interesting to note that they resisted until the end the urgings of their relatives that they buy themselves a television set, which fact may be regarded not only as evidence of their frugality but as a monument to their discretion.

"The Court is convinced that Martha O. Jenkins would never have encroached upon her sister's estate to satisfy any of her own meager wants or needs, first because she had no need to do so, and second because the remaindermen named in her sister's will were the same remaindermen who were the beneficiaries under her own will later probated, but the question is

not what she *would* have done with the property, but rather what she *could* have done with it." 296 F.Supp. at 209 (emphasis in original).

■ The district court was correct in holding that the relevant inquiry is not what the decedent may have *planned* to do with the property, but rather what she was *empowered* to do. An ascertainable standard must be a *prescribed* standard, not a post-prescriptive course of action. The acting out of the standard is irrelevant, for it is the script rather than the actor which controls a decision concerning the existence of an ascertainable standard. In determining what the decedent was *empowered* to do, courts must look to the express language of the instrument creating the power, or to the language of the instrument as modified by state law. See, e. g., Miller v. United States, 3 Cir. 1968, 387 F.2d 866; Strite v. McGinnes, 3 Cir. 1964, 330 F.2d 234, cert. denied, 379 U.S. 836, 85 S.Ct. 69, 13 L.Ed.2d 43; Potter v. United States, N.D.W.Va.1967, 269 F.Supp. 545; Stafford v. United States, E.D.Wis.1964, 236 F.Supp. 132; Ewing v. Rountree, M.D.Tenn.1964, 228 F.Supp. 137, aff'd, 6 Cir. 1965, 346 F.2d 471, cert. denied, 382 U.S. 918, 86 S.Ct. 292, 15 L.Ed.2d 233; Pittsfield National Bank v. United States, D.Mass.1960, 181 F.Supp. 851; Estate of Josephine R. Lanigan, 1965, 45 T.C. 247.

■ In the instant case the instrument creating the power—the will of Ada Lee Jenkins—gave Martha O. Jenkins "full and unlimited power and authority to dispose of the [property] in fee simple by gift or otherwise at any time during her life without accountability to anyone." It is difficult to imagine a more unlimited, open-ended, freewheeling power than this. Moreover, Georgia law does not modify such language by *implying* any "support and maintenance" limitation. See Williams v. Jones, 1963, 219 Ga. 45, 131 S.E.2d 553; Townsley v.

Townsley, 1952, 209 Ga. 323, 72 S.E.2d 289.

In the words of the district court, "we can only conclude that the will gave Martha O. Jenkins an unlimited right to consume or give away *inter vivos* any or all of her sister's property regardless of whether such encroachment was for support and maintenance or for some other purpose." 296 F.Supp. at 210. Her complete power over the property during her lifetime was not modified by any standard other than one she might impose on herself. Thus her power was not limited by any "ascertainable standard" within the meaning of § 2041(b) (1) (A).

## III.

Plaintiffs' third contention is that decedent did not possess an exercisable general power of appointment at the time of her death because the will of Ada Lee Jenkins had not then been probated or filed or offered for probate. Plaintiffs prevailed on this issue in the district court.[3] 296 F.Supp. at 206–208. Our examination of this contention, however, leads us to the conclusion that it must be rejected.

We note at the outset that there is no language in the will itself which evidences a desire on the part of Ada that Martha's possession of the power of appointment was to be postponed until some time after Ada's death. On the contrary, the relevant provisions of the will are couched in terms of the moment when Martha survived Ada, i. e., the moment of Ada's death:

"Should my sister, Martha O. Jenkins, survive me, then in that event, I give, bequeath and devise to Martha O. Jenkins all my right, title and interest * * *."

■ The district court, however, found significance in the language of

3. This aspect of the district court's opinion has been commented upon by a student writer in the Georgia Law Review. Note, 3 Ga.L.Rev. 766 (1969).

Item Sixteen of the will, which provides in part:

> "*Upon the probate and admission to record* of this my will, it is my desire that my executrix, executors or executor administer my estate with [sic] the control or supervision of any Court or other authority and to that end, reposing special confidence in them, I relieve them and each of them of accountability to any Court or other authority in the administration, management and final distribution of my estate." (Emphasis added.)

The district court placed special emphasis on the first seven of the quoted words. We cannot agree, however, with the court's apparent conclusion that these words expressed a desire on the part of the testatrix to postpone her surviving sister's possession of the power of appointment. On the contrary, when these words are read in the context of the entire sentence, it is clear that they have reference only to the procedure of probating the will, and not to the timing of the passage of the power of appointment to Martha O. Jenkins.

Moreover, we find nothing in Georgia law which leads us to conclude that Martha's possession of the power would have been postponed until probate or until any other point in time later than the death of Ada. In the absence of any contrary provision in the will itself, we think it is clear that Martha received an exercisable general power at the moment of Ada's death.

With regard to the provisions of Georgia law, the parties to the present litigation direct our attention to different sections of the Georgia Code. The government cites § 113–105, which provides:

> "A will shall take effect instantly upon the death of the testator, however long the probate may be postponed."

The plaintiffs cite § 113–801, which provides:

> "All property, both real and personal, being assets to pay debts, no devise or legacy passes the title until the as-

sent of the executor is given to such devise or legacy."

In addition to the sections cited to us by the parties, we consider relevant the provisions of § 113–802:

> "The assent of the executor may be express or may be presumed from his conduct. Assent should be evidenced by a conveyance of realty or tangible personalty or by an assignment or transfer of a chose in action. In the absence of a prior assent, the discharge of the executor shall be conclusive evidence of his assent. If no assent has been given within one year after the executor has qualified, a devisee or legatee may cite the executor in the court of ordinary to show cause why his assent should not be given or may compel him to assent by an equitable proceeding. The executor may not, by assenting to legacies, interfere with the rights of creditors, nor can he, by capriciously withholding his assent, destroy the legacy."

In construing these provisions of Georgia law, we must place the role of state law in its proper perspective. Our concern is whether under Georgia law decedent received at the time of her sister's death a power whose contours bring it within the federal definition of a general power of appointment; we are not primarily concerned with the label attached to that power by state law. We are guided by the words of the Supreme Court in Morgan v. Commissioner of Internal Revenue, 1940, 309 U.S. 78, 80–81, 60 S.Ct. 424, 426, 84 L.Ed. 585, 588:

> "State law creates legal interests and rights. The federal revenue acts designate what interests or rights, so created, shall be taxed. Our duty is to ascertain the meaning of the words used to specify the thing taxed. If it is found in a given case that an interest or right created by local law was the object intended to be taxed, the federal law must prevail no matter what name is given to the interest or right by state law."

■ We turn, then, to Georgia law to ascertain the character of the interest which Martha O. Jenkins received at the moment of her sister's death. It is undisputed that she did not receive a fully perfected legal *title* to the property involved, for under Georgia law title does not vest in a devisee until the executor of the estate gives his assent to the devise. Georgia Code § 113–801; Miller v. Harris County, 1938, 186 Ga. 648, 198 S.E. 673; Willingham v. Watson, 1928, 165 Ga. 870, 142 S.E. 458. The purpose of this delay in the vesting of title, however, is not to cut off or diminish any beneficial interest of any devisee. Georgia has merely established a method to insure that the debts of the estate are paid, a procedural device to protect the creditors. See Georgia Code §§ 113–801, 113–802; Peck v. Watson, 1928, 165 Ga. 853, 142 S.E. 450; City of Blakely v. Hilton, 1920, 150 Ga. 27, 102 S.E. 340, 343.

■ Although a Georgia devisee does not receive a perfected *title* at the moment of the testator's death, he does receive the essence of his interest under the will. The Georgia courts have said that a devisee receives an "inchoate title" subject to perfection when the executor assents to the devise. Oliver v. Irvin, 1964, 219 Ga. 647, 135 S.E.2d 376, 377; Biggers v. Gladin, 1948, 204 Ga. 481, 50 S.E.2d 585, 593; McGahee v. McGahee, 1948, 204 Ga. 91, 48 S.E.2d 675, 677; Pope v. Stanley, 1947, 202 Ga. 180, 42 S.E.2d 488, 491; Matson v. Crowe, 1942, 193 Ga. 578, 19 S.E.2d 288, 291; Citizens' Bank of Vidalia v. Citizens' & Southern Bank, 1925, 160 Ga. 109, 127 S.E. 219, 221; Watkins v. Gilmore, 1904, 121 Ga. 488, 49 S.E. 598, 599.

■ It is clear that a Georgia devisee possessing an "inchoate title" has a genuine beneficial interest in the property. He has a right of action against the executor of the estate if the executor has not given his assent to the devise within one year after his qualification as executor. Georgia Code § 113–802. Even before the passage of a year the devisee can bring an action in equity to compel the executor to assent where his refusal to give his assent is unreasonable. Clay v. Clay, 1920, 149 Ga. 725, 101 S.E. 793; Lester v. Stephens, 1901, 113 Ga. 495, 39 S.E. 109. The devisee also has a right of action against the executor if he violates his obligations as a fiduciary. See Dorsey v. Green, 1947, 202 Ga. 655, 44 S.E.2d 377. Moreover, the devisee can bring an action against a third party to protect his interest in the property if the executor because of "fraud or collusion" fails to protect the devisee's rights. Rogers v. Taintor, 1955, 93 Ga.App. 54, 90 S.E.2d 629; Coastal Public Service Co. v. Mordecai, 1934, 49 Ga.App. 60, 174 S.E. 147. Furthermore, a devisee can execute a valid conveyance of the property prior to the assent of the executor; when the executor assents to the devise, the perfected title inures to the benefit of the grantee of the conveyance rather than the devisee-grantor. Walker v. Horton, 1937, 184 Ga. 429, 191 S.E. 462, 464.

■ Thus the process of probating a will in Georgia is essentially a formal validation of the property interests which came into existence upon the death of the testator. See Northrop v. Columbian Lumber Co., 5 Cir. 1911, 186 F. 770, 780, 108 C.C.A. 640. In Georgia, as in other jurisdictions, probate is title-accommodating rather than interest-creating.

■ We are compelled to reject plaintiffs' contention that Martha O. Jenkins could not have exercised her power of appointment prior to the probate of her sister's will. Under Georgia law she could have made conveyances of the property involved in this case at any time after her sister's death, subject only to subsequent perfection of the record title. The fact that she did not then possess a fully perfected record title is not controlling for federal estate tax purposes. The substantive powers she received at the time of her sister's death clearly came within the definition of a general power of appointment in § 2041(b) (1) of the Internal Revenue Code, and these powers were clearly exercisable at the time of her death.

In reaching a contrary result, the court below relied on Townsend v. United States, E.D.Tex.1964, 232 F.Supp. 219, in which the court held that a power of appointment devised to a surviving wife by her husband's will did not pass to the wife prior to the probate of the will. In our opinion, however, the holding in *Townsend* is inapposite to the present case. *Townsend* was decided on the basis of then-existing language in the Texas Probate Code [4] which has no counterpart in the Georgia Code. *Townsend* is no longer applicable even to Texas powers of appointment, for the Texas law has been amended; [5] it was never applicable to powers of appointment in Georgia.

Nothing in *Townsend* or in any other judicial decision can relieve the decedent's estate of the burden of paying estate taxes on the value of the property embraced by her power of appointment. Both Martha O. Jenkins and Ada Lee Jenkins planned their testamentary dispositions in such a manner that the surviving sister (Martha) would be able to exercise control over the property of the testatrix (Ada) immediately upon the death of the latter. This being true, the executors of Martha's estate cannot reasonably complain when confronted by the estate tax consequences of the sisters' plan of disposition. The fact that Martha died unexpectedly very soon after the death of Ada cannot change the character of the property interest which Martha possessed. The conclusion is inescapable that Martha received an exercisable general power of appointment at her sister's death and possessed the exercisable power at her death. The estate taxes demanded by the Commissioner must therefore be paid. [6]

### IV.

Plaintiffs finally contend that including the value of the property here involved in the gross estate of Martha O. Jenkins constitutes a deprivation of property without due process of law in violation of the Fifth Amendment. The district court did not reach this issue be-

4. The decision of the district court in *Townsend* was based on a strained and hypertechnical interpretation of § 37 of the Texas Probate Code, which then provided in pertinent part as follows: "When a person dies, leaving a lawful will, all of his *estate* devised or bequeathed by such will shall vest immediately in the devisees or legatees * * *." (Emphasis added.) The court seized upon the word "estate" to hold that the power of appointment did not pass to the surviving spouse prior to probate. The court expressed this holding in these words:

"The fact that Mr. Musgrove conferred on Mrs. Musgrove the power of appointment in question here * * * did not of itself vest in Mrs. Musgrove any *estate* in the property bequeathed and devised to her. Such a power of appointment is no more than a personal privilege or a mere authority. It is not either property or a property right or interest in property. Furthermore, it is not an *estate* or an interest in an *estate*." 232 F.Supp. at 222 (emphasis added).

If the *Townsend* problem were now before us, we would look askance at the court's analysis of the word "estate" as used in the Texas Probate Code. The *Townsend* court's approach smacks of medieval fascination with technical concepts such as "seisin" and "enfeoffment."

The *Townsend* problem no longer exists, however, because the Texas Legislature amended the statute subsequent to the decision in *Townsend*. The relevant provision of § 37 of the Texas Probate Code now reads as follows: "When a person dies, leaving a lawful will, all of his estate devised or bequeathed by such will, *and all powers of appointment granted in such will*, shall vest immediately in the devisees or legatees of such estate *and the donees of such powers * * *.*" (Emphasis added).

5. See footnote 4 *supra*.

6. In the present case there is no problem concerning the *value* of the property embraced by the power of appointment. We note, however, that the value of property embraced by a power of appointment is diminished by charges or encumbrances lodged or lodgeable against it or the estate. For example, if property over which a power exists is worth $100,000 at the time of the testator's death, but $50,000 must be realized out of this property to pay debts of the testator's estate, then the taxable value of this property is only $50,000.

**550**

cause of its findings favorable to the plaintiffs on two other issues. 296 F. Supp. at 210. We find it necessary to consider plaintiffs' constitutional argument, however, in view of the fact that on each of the preceding issues we have reached a decision adverse to the plaintiffs' position.

Plaintiffs base their constitutional argument on two premises. First, they contend that the property here involved passed directly from the estate of Ada Lee Jenkins to the remaindermen "without decedent at any time receiving the right to the use or benefit of those properties, or of the power or right to dispose of those properties." This argument is nothing more than a reiteration of plaintiffs' contention that Martha O. Jenkins received nothing by her sister's will at the time of her sister's death. In the light of our holding that Martha O. Jenkins *did* receive powers and rights at the time of her sister's death, this argument is untenable.

Secondly, plaintiffs contend that decedent was denied an opportunity to exercise her statutory right to disclaim or renounce the power of appointment. Section 2041(a) (2) grants to every donee of a post-1942 power the right to disclaim or renounce the power. If a decedent exercises this right, the value of the property as to which he has renounced the power will not be included in his gross estate. Moreover, the exercise of the right is not itself a taxable event.

Plaintiffs direct our attention to Treas.Reg. § 20.2041–3(d) (6), which provides:

"A disclaimer or renunciation of a general power of appointment is not considered to be a release of the power. The disclaimer or renunciation must be unequivocal and effective under local law. A disclaimer is a complete and unqualified refusal to accept the rights to which one is entitled. There can be no disclaimer or renunciation of a power after its acceptance. In any case where a power is purported to be disclaimed or renounced as to only a

portion of the property subject to the power, the determination as to whether or not there has been a complete and unqualified refusal to accept the rights to which one is entitled will depend on all the facts and circumstances of the particular case, taking into account the recognition and effectiveness of such a disclaimer under local law. Such rights refer to the incidents of the power and not to other interests of the decedent in the property. If effective under local law, the power may be disclaimed or renounced without disclaiming or renouncing such other interests. In the absence of facts to the contrary, the failure to renounce or disclaim within a reasonable time after learning of its existence will be presumed to constitute an acceptance of the power."

Relying on the final sentence of the quoted provision of the regulation, plaintiffs contend, in effect, that every donee of a general power of appointment is entitled to a reasonable time to disclaim or renounce before he can be charged with possession of the power. Applying this principle to the facts of this case, plaintiffs argue that Martha O. Jenkins did not have a reasonable time in which to exercise her right to disclaim or renounce.

■ Even if we were to assume *arguendo* that the principle for which plaintiffs contend is correct, they still would fail in their attempt to apply such a "reasonable time" principle to the facts of this case. In the first place, if plaintiffs' contention in this regard is based on the theory that decedent had not yet received any power because her sister's will had not yet been probated, then the contention is untenable for the reasons previously given. In addition, plaintiffs' contention must be rejected even if it is not based on the time-of-probate argument. The sentence of the regulation upon which plaintiffs heavily rely provides that "[i]n the absence of facts to the contrary, the failure to renounce or disclaim within a reasonable time *after learning of its existence* will be pre-

sumed to constitute an acceptance of the power." Treas.Reg. § 20.2041–3(d) (6) (emphasis added). Martha O. Jenkins was obviously aware of the existence of her power of appointment as soon as it came into her possession at the time of her sister's death. After all, she was not unfamiliar with the provisions of her sister's will. Moreover, after her sister's death she had sufficient time to execute a document renouncing her designation as executrix under her sister's will. Had she desired to disclaim or renounce her power of appointment, she could have done so at that time. We would ignore reality if we were to accept plaintiffs' argument that decedent was somehow robbed of her right to renounce.

Plaintiffs' constitutional argument, like their other contentions, is completely devoid of merit. The power of appointment possessed by Martha O. Jenkins had taxable existentiality at her death and was untainted by any constitutional disablement. The Commissioner's inclusion within her estate of the value of the properties embraced by the power is fully sanctioned by law.

The judgment of the district court is reversed.