ESTATE OF ADELAIDE L. McCULLEN, DECEASED, WILLIAM C. McMULLEN, EXECUTOR, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of McMullen v. Commissioner
Docket No. 26171-87.
United States Tax Court
T.C. Memo 1988-500; 1988 Tax Ct. Memo LEXIS 534; 56 T.C.M. (CCH) 507; T.C.M. (RIA) 88500; October 18, 1988. Mason Standley, for the petitioner. Jan W. Busby, for the respondent. COHEN
MEMORANDUM FINDINGS OF FACT AND OPINION
*535 COHEN, Judge: Respondent determined a deficiency of $ 104,363 in the Federal estate tax of the estate of Adelaide L McMullen, deceased, William C. McMullen, executor. After concessions, the issues remaining for decision are: (1) Whether decedent possessed a general power of appointment over a one-half of an undivided one-half interest in certain trust property; (2) Whether petitioner is entitled to a discount from the fair market value of the proportionate interest of the trust property to reflect the marketability of fractional interests; and (3) Whether petitioner is entitled to a discount from the fair market value of the proportionate interest of the trust property to reflect restrictions on the same of the trust property. The answers to these questions depend on the nature of decedent's property interests created by the trust agreement. FINDINGS OF FACT Many of the facts have been stipulated, and the facts set forth in the stipulation and supplemental stipulation are incorporated in our findings by this reference. Adelaide L. McMullen (decedent) died testate on April 13, 1983. At the time of her death, decedent resided in the State of Texas. Decedent's son, *536 William C. McMullen, is the executor of her estate. Decedent was the widow of Clements McMullen (Mr. McMullen), who died testate on January 9, 1959. Prior to June 12, 1950, decedent and Mr. McMullen purchased a range of approximately 9,600 acres in Terrell County, Texas, with an unrelated third party, John L. Fogarty (Fogarty). On June 12, 1950, decedent, Mr. McMullen, and Fogarty formed the McMullen-Fogarty Trust (the M-F Trust). The M-F Trust corpus consisted of the approximately 9,600 acres of ranch property located in Terrell County, Texas. The terms of the M-F Trust provided that Fogarty (First Party) and decedent and Mr. McMullen (Second Party) were the joint owners of the Terrell County, Texas, real estate. First Party and Second Party were each vested with title to an equal undivided one-half interest in the property. The terms of the M-F Trust designated the Del Rio Bank & Trust Company of Del Rio, Val Verde County, Texas, as Third Party. Article IV of the M-F Trust provided: IV Upon the death of the survivor of the said John L. Fogarty and Clements McMullen * * * the legal title to all of the real estate described in paragraph No. 1 hereof, shall immediately *537 vest in Third Party, as Trustee, for the time, and for the uses, purposes, and trust in this agreement provided. Legal title to the real estate vested in the Third Party Trustee at Mr. McMullen's death on January 9, 1959. Upon legal title vesting in the Trustee, Article V of the M-F Trust provided that equitable title to the real estate was to vest as follows: V * * * (b) Second Party now here designates and names Mrs. Adelaide Lewis McMullen as the person in whom shall vest the equitable title to the remainig undivided one-half interest in or estate of the real estate, hereinabove described, upon the investment of the legal title in Third Party, as Trustee as hereinabove provided. Upon vesting of legal title in the Trustee, Article VI of the M-F Trust gave the Trustee full power to manage and control the trust property during the period of the trust. Article IX of the M-F Trust provided that the Trustee distribute the net trust income as follows: IX * * * the Third Party shall, on the 30th day of January and the 30th day of July of each calendar year, during the life of the Trust Estate, pay one-half of all the net proceeds of the income accruing *538 to the Trust Estate, remaining in the hands of the Trustee, in equal shares to the three sisters of the said John L. Fogarty. * * * The other one-half of the net proceeds of the income accruing to the Trust Estate remaining in the hands of the Trustee shall, on the dates hereinabove specified, be paid by Third Party to Mrs. Adelaide McMullen, or to those succeeding to her estate by testamentary devise, if she dies testate, and, if she dies intestate, then to those succeeding to her estate under the laws of descent and distribution of the State of Texas. * * * Article XI of the M-F Trust provided the duration of the trust as follows: XI The term during which the Trust Estate herein created shall exist shall be a period of Three (3) years from and after the death of the survivor of the following named persons, to-wit: (a) Mrs. Marie Fobarty Donelan; (b) Mrs. Katherine Fogarty Humphrey; (c) Miss Angela Fogarty; (d) Clement McMullen; (e) Mrs. Adelaide Lewis McMullen Unless, within a period of six months from and after the death of the survivor of said five above named persons, by written instrument filed with the Trustee, the heirs, whethersuch by *539 testamentary devise or by the laws of descent and distribution in case of death intestate, of said five above named persons, shall request and direct that said Trust Estate shall continue for a longer period of time, in which event the Trust Estate herein created shall exist for a period of Ten (10) years from and after the death of the survivor of the above named five persons. Decedent was the last of the five measuring lives to die. The heirs of the five measuring lives did not elect to have the trust continue for the 10-year period after decedent's death. Article XII of the M-F Trust provided that the Trustee should sell the real estate comprising the trust corpus within the term of the trust. The entire remaining trust corpus was sold on December 26, 1986. Article XIII of the M-F Trust provided that the Trustee distribute the net proceeds resulting from the sale of the trust corpus as follows: XIII Upon the consummation of the sale of the corpus of the Trust Estate herein created * * * said Third Party shall forthwith apportion the net proceeds of all money deriving from such sale in two equal shares or parts, * * * one of which shares or parts shall *540 be paid to the heirs or devisees of the survivor of Clements McMullen and Mrs. Adelaide Lewis McMullen, and thereupon the Trust Estate hereby created shall terminate and expire. Decedent exercised her power of appointment by will, admitted to probate January 4, 1985, as follows: I bequeath and devise all of my right, title and interest in and to all of the residue of the property of which I may die possessed or entitled to receive, real, personal, or mixed, of whatsoever nature and wheresoever situated, * * * to my sons EDWARD L McMULLEN, FRANK M. McMULLEN, WILLIAM C. McMULLEN and THOMAS H. McMULLEN, in equal shares. * * * Decedent's executor timely filled a Federal estate tax return electing the alternative valuation date, October 13, 1984. Included on "Schedule A -- Real Estate" was decedent's one-half of an undivided one-half interest in the M-F Trust property. Included on "Schedule H -- Powers of Appointment" was the one-half of an undivided one-half interest in the M-F Trust property that Mr. McMullen conveyed into the trust. Decedent's interest in the M-F Trust property reported on Schedule A was valued at $ 204,000. This value was based on an appraisal report *541 by Noble, Glen & Associates, Inc., real estate appraisers. The October 22, 1984, report set a fair market values, as of April 13, 1984, for the entire M-F Trust property at $ 100 per acre, less a 15 percent discount for an undivided interest. Decedent's interest in the M-F Trust property through a power of appointment reported on Schedule H was valued at $ 143,300. This value was based on an appraisal report and supplement prepared by Noble, Glen & Associates, Inc. The January 3, 1985, supplemental appraisal report set a fair market value as of April 13, 1984, for the entire M-F Trust property at $ 100 per acre, less a 15 percent discount for an undivided interest and less an additional 12.5 percent discount based on the assumption that the M-F Trust instrument provided for a 3-year restriction on disposition. In the notice of deficiency, respondent disallowed the 15 percent discount for an undivided interest taken on the real estate reported on Schedule A. Respondent also disallowed both the 15 percent discount for an undivided interest and the 12.5 percent discount for the restriction on disposition taken on the power of appointment reported on Schedule H. OPINION
I. *542 General or Special Power of Appointment
Section 2041(a)(2)[1] provides that the value of the gross estate of a decedent for Federal estate tax purposes shall include the value of "any property with respect to which the decedent has at the time of his [or her] death a general power of appointment created after October 21, 1942." Section 2041(b)(1) defines a "general power of appointment" as "a power which is exercisable in favor of the decedent, his estate, his creditors, or the creditors of his estate." It is not necessary for the power to be exercisable with respect to all four categories of potential beneficiaries. A power of appointment is a general power under section 2041(b)(1) if the donee of the power can appoint the property in favor of any one of those specified categories. Jenkins v. United States,428 F.2d 538, 544 (5th Cir. 1970). Treasury regulations promulgated under this section provide that *543 the term "power of appointment" includes "all powers which are in substance and effect powers of appointment regardless of the nomenclature used in creating the power and regardless of local property law connotations." Section 20.2041-1(b), Estate Tax Regs.; Lehman v. United States,448 F.2d 1318, 1319 (5th Cir. 1971); Jenkins v. United States,428 F.2d at 547; Grossman v. Campbell,368 F.2d 206 (5th Cir. 1966); Phinney v. Kay,275 F.2d 776 (5th Cir. 1960). Petitioner does not dispute that decedent did acquire, upon the death of her husband, not only the right to receive the net income of the M-F Trust during her lifetime, but also the power to appoint the principal of the trust. Rather, petitioner contends that under the common law rule of construction, ejusdem generis, decedent's power to appoint the assets of the trust was confined within legal limitations sufficient to exempt it from the statutory definition of a general power. The ultimate issue, then, is whether the terms of the trust instrument actually confined decedent's power of appointment. *544 The rule of ejusdem generis, when used in the construction of wills and other instruments, is that where general words follow an enumeration of particular or specific persons or things, the general words will be construed as applying only to persons or things of the same general kind or class as those enumerated. Kansas City Southern Railway Co. v. McNamara,817 F.2d 368, 372 (5th Cir. 1987); Estate of Short v. Commissioner,68 T.C. 184, 193 (1977). Petitioner argues that when this rule of construction is applied to interpret the M-F Trust instrument, the terms "those succeeding to her estate by testamentary devise" in Article IX, and "devisees" in Article XIII should be limited to decedent's intestate heirs; i.e., her children. In Article XIII of the trust instrument, the Trustee is directed to pay one-half of the net proceeds from the sale of the trust corpus "to the heirs or devisees" of decedent. Petitioner argues that, under the rule of ejusdem generis, the "specific" term "heirs" followed by the "general" term "devisees" indicates that decedent has the power to dispose of her share of the trust assets only to her children; i.e., a special *545 power of appointment. To support this strained construction of the trust terms, petitioner attempts to analogize the facts here with the facts in Norris v. United States,3 AFTR 2d 1776, 59-1 USTC para. 11,852 (E.D. Okla. 1959). In the Norris case, the decedent wife had a power to appoint "to her children and their heirs, and to such other beneficiaries as she may deem best." Norris v. United States,3 AFTR 2d 1776, 1777, 59-1 USTC par. 11,852 at 72,308. The District Court for the Eastern District of Oklahoma, citing the rule of ejusdem generis, determined that the power to appoint "to such other beneficiaries" gave the decedent only the additional power to appoint to her husband's children by his first marriage. Those persons were clearly contemplated by the term "beneficiaries" as used 26 times in the instrument. Thus, the Norris court held that the power was not a general power of appointment. The decedent in Norris was held to be merely an agent of the donor of the power, and therefore, did not have an unlimited ability to make a testamentary transfer of her interests. Here, decedent's control over the disposition of the trust *546 was absolute. The distinction between the facts here and in Norris is material. We agree with respondent that Norris is distinguishable and should not influence the result here.
The guiding principle in interpreting testamentary documents, both wills and trusts, is to ascertain the intent of the maker. Lehman v. Corpus Christi National Bank,668 S.W. 2d 687, 688 (Tex. 1984). If the instrument itself is unambiguous, the court should not go beyond the express language used within the four corners of the instrument. Frost National Bank of San Antonio v. Newton,554 S.W. 2d 149, 154 (Tex. 1977). The language of the instrument in question here is not ambiguous. By the express terms of the trust, decedent was given an unrestricted and discretionary power to appoint by will her interest in the trust corpus and its income to whomever she chose. Decedent, therefore, held at her death a general power of appointment and the value of the property subject to that power was properly included in her gross estate. Article IX of the trust instrument provides *547 that one-half of the net trust income is to be paid "to those succeeding to [decedent's] estate by testamentary devise, if she dies testate"; i.e., devisees, and "if [decedent] dies intestate, then to those succeeding to her estate under the laws of descent and distribution"; i.e., her heirs. The rule of ejusdem generis cannot be applied to this language. Here, general words do not follow an enumeration of specific persons or things. Instead, the general reference to "devisees" appears first and is followed by the more specific reference to "heirs." Thus, the express trust language contains no specifically enumerated persons by which the general testamentary provision can be limited.
II. Discount to Reflect Marketability of Fractional Interests
The estate tax is an excise tax on the transfer of property at death, and the property to be valued for estate tax purposes is that which the decedent actually transfers at death rather than the interest held by the decedent before death or the interest held by the legatee after death. Propstra v. United States,680 F.2d 1248, 1250 (9th Cir. 1982); *548 Estate of Bright v. Commissioner,658 F.2d 999, 1001 (4th Cir. 1981) (en banc). Section 2031(a) provides that the value of a decedent's gross estate shall include "the value at the time of his [or her] death of all property." Section 20.2031-1(b), Estate Tax Regs., defines fair market value as "the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts." The fair market value to be attributed to decedent's interests in the trust property is a question of fact. Petitioner bears the burden of proving that the value determined by respondent is incorrect. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure.
The parties have agreed that the fair market value of decedent's interest in the M-F Trust, as reported on Schedules A and H of decedent's Federal estate tax return, is $ 100 per acre, before any discounts. To establish the net fair market value of decedent's interests in the M-F Trust, petitioner and respondent each presented the testimony of an expert *549 witness. Both experts prepared appraisal reports prior to trial and testified at trial as to their conclusions and appraisal methods. Petitioner's expert witness, Martyn C. Glen (Glen) of Noble, Glen & Associates, Inc., testified that it is industry practice to discount fractional interests in real estate. Glen testified further that "because ranch properties are * * * difficult to operate under the terms of co-tenancy, I feel that a minimum for a partial interest is 15 percent discount." Respondent's expert witness, Wayne Austin (Austin) of Austin-Foster Appraisal Associates, also testified that it is customary to allow a discount for a fractional interest in real estate when that fractional interest is offered for sale. Austin also testified that a 15-percent discount would be reasonable if a fractional interest of a ranch property were offered for sale. Austin testified, however, that if there were an agreement providing that a property would be sold as a fee simple interest, there would be no reason to take a discount for a fractional interest. Petitioner's expert witness, Glen, also testified that the value of the undivided interest subject to the power of appointment *550 should be further discounted for the time value of money. Assuming that the trust instrument provided a 3-year restriction on disposition of the trust property, Glen testified that a 12.5-percent discount from fair market value would be appropriate. Respondent's expert witness, Austin, however, testified that a discount for the time value of money would not be required if the trust property could be sold immediately following the decedent's death. Respondent argues that under the terms of the trust instrument, the interest held by the estate must be sold with the other undivided interests; thus the fractional interest's proportionate share of the fair market value of the whole will be realized. In the usual case, death brings no change in the value of property. In United States v. Land,303 F.2d 170, 172 (5th Cir. 1962), the Court of Appeals for the Fifth Circuit examined several instances where the value of a decedent's property differed after death from its value during life. The Land court held that a restrictive agreement, which depressed the value of a partnership interest but which by its terms expired at the decedent's death, did not affect value *551 for estate tax purposes. In so holding, the court found that a potential purchaser at the time of decedent's death "would not be influenced in his calculations by past risks that have failed to materialize or by restrictions that had ended. Death tolls the bell for risks, contingencies, or restrictions which exist only during the life of the decedent." United States v. Land,303 F.2d at 173. Similarly, in Ahmanson Foundation v. United States,674 F.2d 761 (9th Cir. 1981), the Court of Appeals for the Ninth Circuit considered the terms of a trust agreement which provided that a shell corporation was to become unconditionally entitled to shares of its holding company's common stock at the moment of the decedent's death. In determining the value of the shares at the moment of decedent's death, the court took into account the transformations of the property that occurred logically prior to the distribution of the property to the beneficiaries. Ahmanson Foundation v. United States,674 F.2d at 767. The discount for undivided fractional ownership proposed by petitioner's expert witness assumes that the decedent's undivided interests *552 in the M-F Trust would be sold separately and apart from the remaining interests in the trust corpus. Petitioner, however, ignores the express trust language directing the trustee to sell the entire trust corpus as a fee simple interest and to distribute the proceeds of the sale to the beneficiaries. A discount from fair market value to reflect the marketability of fractional interests is, therefore, not justified.
III. Discount to Reflect Restrictions on Sale
As previously discussed, where the language of a testamentary instrument is unambiguous, it is inappropriate to resort to rules of construction to vary those express terms. Petitioner contends, however, that Articles XI and XII of the trust instrument are in conflict, and that Article XI must control. Article XI sets out the term of the trust, providing that the trust terminates 3 years after the death of last of five measuring lives, unless within 6 months the beneficiaries request that the trust continue for a longer period. Article XII directs the trustee to sell the trust corpus within the term specified in Article XI. Article XIII adds that, upon the sale of the trust corpus, the trustee shall pay *553 the net proceeds to the beneficiaries and the trust will terminate. Petitioner interprets Article XI as restricting the trustee's power of sale granted by Article XII during the 6-month period in which the beneficiaries could elect the term of the trust. Assuming that there was a minimum 6-month restriction on the trustee's power to sell the trust corpus, the question is whether a discount to present value is appropriate. Petitioner filed a Federal estate tax return, electing the 6-month alternative valuation date. At that time, the trust beneficiaries' 6-month option to extend the trust term expired unexercised, and any potentiall conflict between the trust provisions was resolved. As of the valuation date, the trustee had the power to sell the entire trust corpus and distribute the net proceeds and the obligation to do so within the remaining 2-1/2 year trust term. A discount from fair market value to reflect restrictions on sale is, therefore, not justified. Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code as amended and in effect as of the date of decedent's death, except as otherwise noted. ↩